## S. F. FRARY, EX'R OF D. GUSHA'S WILL, *v.* ALONZO B. GUSHA.

*Probate of Will.    Evidence.    Suicide.    Insanity.    Undue Influence.    Practice.*

1. In an action involving the probate of a will, evidence that the contestant did not deny collateral statements made by the testator at a hearing for the appointment of a guardian over him, is not admissible.

2. Where the defence was the insanity of the testator and undue influence, after evidence had been introduced by the proponent of the will tending to prove that the testator held his son, the contestant, in disesteem, evidence was properly allowed to show that the son was industrious and had no vicious habits, as proving that if his father did not esteem him, it was due to some unnatural condition or influence.

17

Frary *v.* Gusha.

3. Evidence was admissible to show the business character and financial condition of one whom the testator gave a power of attorney to do his business, as bearing on his capacity to make the will.

4. EVIDENCE—SUICIDE—INSANITY—EXPERT. A physician, who attended the testator a few days before he committed suicide, was asked to state whether the condition the testator had been in was an indication of insanity; and what the act of suicide would indicate as to the soundness of his mind, and answered that he believed that the suicide was an insane act; and that he should "quicker expect" a man subject to melancholy to commit suicide than one of a happy disposition; *Held*, admissible; that suicide is evidence tending to prove insanity; and the court in its charge treated the answer as such evidence.

5. IMPROPER ANSWER OF WITNESS. Error cannot be predicated on an improper answer of a witness, when no attempt is made to check him, the attention of the court was not called to it, and counsel were not responsible for it; and doubted whether an exception should be allowed in such case.

6. An error in excluding evidence, rendered harmless by the verdict, is not vitiating.

APPEAL from the Probate Court admitting to probate the will of David Gusha. Pleas, want of testamentary capacity because of insanity, and fraud and undue influence. Trial by jury, December Term, 1885, Orange County, ROWELL, J., presiding. Verdict, that the paper propounded as the will of said Gusha ought not to stand and be established because of his incapacity.

Dr. Fred Fletcher was improved as a common witness, and not as an expert, by the proponent. It had already appeared in the case that the testator committed suicide on the 24th day of August, 1880. The witness testified in chief that he knew the testator from 1871 to the time of his death, and was his family physician most of that time and saw him often; that he attended him a few weeks one winter after his wife died, when he was sick with a bilious trouble and deranged from the disease a considerable portion of the time; that he recovered from that and was apparently as well as before, and not deranged until he hurt his thumb the summer he died; that by reason of this injury he was broken of his rest, grew weak and was much depressed in mind, but seemed better after his thumb healed, but did not get back to so good health as he had before; but that he never saw any failure of his memory or understanding, but only that he was more melancholy than before.

In cross-examination the witness testified after the testator's wife died, and before he hurt his thumb, he saw him frequently, but did not notice that his melancholy increased, nor that his actions were strange at times, but could not say that such symptoms were not present at times. Then the contestant asked the following questions as an expert:

Q. Mr. Gusha died by his own hand? A. Yes. Q. Now, from your professional knowledge, I will inquire of you whether or not that is not indication of insanity?

This was objected to by proponent for the reason that the witness cannot be heard to say as a professional man what the fact of suicide indicates as to the condition of mind of the person committing the act; that when the fact that the testator did then commit suicide is before the jury, it is for the jury to say what it indicated, and that it is not a proper matter for expert evidence.

The objection was overruled; to which proponent excepted.

Before the witness answered the question, counsel for contestant said to the witness: We are speaking about the mental condition of David Gusha, and as to what the effect of his suicide—what the act of his suicide would indicate as to the soundness or unsoundness of this man's mind?

The witness then answered as follows:

A. I believe, as I testified before, that it was an insane act.

The witness referred to his testimony in a former trial of this cause when he spoke of what he testified before. The witness was then asked as follows:

Q. To what cause did you attribute the melancholy you have spoken of? A. To the way he was made. Q. Is that condition of melancholy very frequently followed by suicide?

This question was objected to by proponent, on the ground that it is not the kind of question proper to put to an expert; and if not put to an expert, the jury know just as much about it as the witness does, and as leading.

The objection was overruled; to which the proponent excepted; and the witness answered as follows:

A. I think the majority of those who commit suicide belong to those who are melancholy.

The witness was further asked:

Q. Will you tell me whether the condition of melancholy points towards suicide? That condition of melancholy being

what you have testified in this cause, and becoming a fixed habit in a person?

To this question proponent objected. The objection was overruled; to which proponent excepted; and the witness answered as follows:

A. I should quicker expect a man who was subject to melancholy to commit suicide, rather than a man of a happy disposition.

It was not shown that Dr. Fletcher was an expert on the question of insanity, unless the fact of his being a practicing physician was a sufficient showing that he was such an expert. No objection was made on that ground, nor was the question raised.

The court charged as to the suicide of the testator:

"The act of suicide is not regarded by the law as necessarily proof of insanity; but when suicide occurs soon after the making of a will it is a fact sufficiently tending to show an unsettled state of mind, and to induce so much apprehension of the existence of some morbid affection tending to the derangement of reason as to be competent to be submitted to the consideration of a jury upon an inquiry into testamentary capacity, and it should beget watchfulness in the minds of the jury in regard to the true state of the testator's mind at the time of the making of the will, when suicide occurs soon after the will is made. But there are so many cases where suicide is committed in a sane state of mind that it cannot be, in its self alone, regarded as establishing unsoundness of mind, though it may tend to show it in the circumstances of the particular case. It is obvious that the longer the time of suicide is after the execution of the will the less force it will have as evidence of unsoundness of mind at the time of the making of the will, and the slighter the inference that can be drawn from it as to the existence of unsoundness of mind at the time the will was made."

*S. B. Hebard* and *J. H. Watson*, for the plaintiff.

The fact of contestant's silence at the hearing for appointment of guardian was admissible. *Hersey* v. *Barton*, 23 Vt. 685. Dr. Fletcher's testimony was not admissible. Whar. & St. Med. Jur. s. 636.

Frary v. Gusha.

" In fact, whatever certain scientific authorities may assert, we are not warranted in coming to the conclusion that suicide is always a symptom or a result of insanity." Whar. & St. Med. Jur. 637 ; *Cram* v. *Thomley*, 47 Ill. 474 ; *Burroughs* v. *Burroughs*, 1 Hag. Ecc. 109.

In *Terry* v. *Ins. Co.* 1 Dillon C. C. 403, the court, MILLER, J., say : " There is no presumption of law, *prima facie* or otherwise, that self-destruction arises from insanity."

In *Merritt* v. *Life Ins. Co.* 55 Ga. 103, the court say : " The fact that the insured committed suicide is not of itself evidence of insanity."

In *Coffee* v. *Life Ins. Co.* 35 J. & S. 314, the court say : " No presumption that insanity exists in the case supposed can be deduced from the mere fact that the death of the person was caused by his own physical act."

In *Reg.* v. *Barton*, 3 Cox C. C. 275, the court say : " Reliance was placed on the desire to commit suicide, but that did not always evidence insanity."

In *Weed* v. *Mutual Benefit Life Ins. Co.* 70 N. Y. 564, the court say : " Insanity cannot be presumed from the mere fact of suicide, as was said by Judge GROVER in the case cited, for the reason that experience has shown that self-destruction is often perpetrated by the sane."

The fact of suicide was proper to be considered with all the proper evidence in the case by the jury, and it was for the jury to say what it indicated. Bushnell Insanity, s. 226 ; *Duffield* v. *Morris, Ex'r*, 2 Harr. (Del.) 375 ; *McElwee* v. *Ferguson, Ex'r*, 43 Md. 479.

The fact that a witness may know more of the subject of inquiry, and better comprehend and appreciate it than a jury, does not warrant his being improved as an expert ; the subject of inquiry must be one relating to trade, profession, science or art, and the witness by study and experience be supposed to have more skill and knowledge relative thereto than jurors of average intelligence may be presumed to have. *Ferguson* v. *Hubbell*, 97 N. Y. 507.

The question asked of Dr. Fletcher does not come within the scope of this rule, but in effect, calls for his opinion founded upon a theory of morals or ethics, and is given based upon speculative data. Rogers on Expert Tes. ss. 11–13; *Van Zandt* v. *Mu. Life Ins. Co.* 55 N. Y. 1699.

*C. W. Clark* and *Heath & Willard*, for the defendant.

The silence of the contestant is not a ground of inference against him. 1 Greenl. Ev. s. 197; *Brainard* v. *Buck*, 25 Vt. 573. Dr. Fletcher's testimony was admissible.

It had already appeared in the case that the testator committed suicide. This was a proper subject-matter for expert testimony. Insanity is a disease. It is one of the recognized functions of experts to say what are and what are not symptoms or indications of disease. *Fairchild* v. *Bascom*, 35 Vt. 398, 406; *Lake* v. *The People*, 1 Parker's Cr. Cas. 495, 559; 1 Greenl. Ev. s. 440. The propriety of asking this question, viz., as to whether suicide is an indication or proof of insanity has been already decided in this state. In *Hathaway* v. *Ins. Co.* 48 Vt. 335, the following question was asked of a witness (p. 340) : "Is suicide more often than otherwise a proof of insanity?" The defendant excepted to the interrogatory, and argued (p. 348) that it did "not call for any facts peculiarly within the knowledge of experts, but conclusions for the jury to draw." The court overruled the exception.

The charge was correct. Tayl. Med. Jur. p. 116; Redf. Wills, c. 3, s. 12.

The opinion of the court was delivered by

ROYCE, Ch. J. This was an appeal from an order of the Probate Court admitting an instrument purporting to be the will of David Gusha to probate. The plea was want of testamentary capacity because of insanity, and undue influence of A. E. Richardson and others.

The will was executed June 30, 1879, and July 17, 1879, an application was made by the contestant, Alonzo Gusha, for

the appointment of a guardian for the testator, upon the ground of his age, infirmity and general incapacity to manage his business. On the hearing both the testator and contestant were witnesses, and the testator testified as to how he had accumulated his property, the amount he had given his son, the contestant, and that for reasons which he then gave he did not intend to give him any more.

The proponent offered to prove that the contestant did not deny the statement so made by the testator, and an exception was taken to the exclusion of the evidence. There was no error in that ruling. The matter in issue upon the hearing was the truth or falsity of the allegations in the application for the appointment of a guardian. The contestant was not bound to admit or deny them. The matters testified to by the testator were collateral to the issue that the court was to determine, and so the evidence offered was not admissible.

After the proponent had introduced evidence tending to show that the testator held his said son in disesteem, the son was permitted, against the objection and exception of the proponent, to show that he was industrious, and had no vicious habits, as tending to show that his father did not hold him in disesteem, or that if he did, it was due to some unnatural condition or influence. The case of *Fairchild* v. *Bascomb*, 35 Vt. 398, is full authority for the admission of the evidence for the purpose for which it was offered.

It appeared that previous to 1878 the testator had been a farmer most of the time, and that having sold his farm he formed a partnership with a Mr. Ames in the saw-mill and lumber business, and remained in partnership with him until about April 1, 1879; that he was an old man and unused to the management of so extensive a business, and that in February or March, 1879, he gave one Richardson a power of attorney to do his business, which previous to that time he had managed himself. The contestant was permitted to show the character of Richardson, as a business man, and his pecuniary condition, as bearing upon the capacity of the testator to make

the will in question, and we hold that the evidence was admissible.

It was admitted that the testator committed suicide August 24, 1880. Dr. Fletcher, who had been his physician since 1871, and saw him the last time a few days before his death, was allowed to testify as to his mental condition during the time he attended upon him, and that some portion of the time he was deranged and more or less melancholy. He was then. asked to state from his professional knowledge whether the condition the testator had been in was or was not an indication of insanity, and what the act of suicide would indicate as to the soundness or unsoundness of his mind. It is said that Dr. Fletcher was improved as a common witness; but no objection was made to his testifying on the ground that it did not appear that he was qualified to testify as an expert. The objection made to his answering the above question was that it was not a proper question to be put to an expert. The question was properly divisible, and there can be no doubt about the admissibility of an answer to the first part of it. There is a conflict of authority upon the question of the admissibility of such evidence as was called for by the second part of the question. While it has been generally held that the fact that one committed suicide is not conclusive evidence of insanity, it has as generally been held that it was evidence tending to show insanity, and the answer of the witness that he believed testator's suicide was an insane act, was so treated by the judge in his charge to the jury. The act was an unnatural one; and the question put to the witness was undoubtedly understood by him as calling for his professional opinion as to the mental condition of the testator when he committed it; and it was probably so understood by the jury. Applying the rule laid down by Judge ALDIS in *Fairchild* v. *Bascomb*, we think such an inquiry might well be put. It is in substance asking the professional opinion of a medical expert as to what the future mental condition of his patient will be. The trial in *Fairchild* v. *Bascomb*, and in *Hathaway* v. *Ins. Co.* 48 Vt. 335, pro-

Frary *v.* Gusha.

ceeded upon that theory of the law. In the last-named case it was held that the same kind of evidence was properly admitted. The only difference we discover between that case and this is in the form of the questions and answers; so it was not error to admit the evidence.

Counsel for contestant inquired of a witness introduced by him if he had any occasion to look for Richardson's property. No objection was made to the question, but it is claimed that the answer given to it was improper. It does not appear that any attempt was made to check the witness while the answer was being given, or that the attention of the court was called to it, and the propriety of allowing an exception may well be doubted. But treating it as having been properly allowed, error cannot be predicated upon the impropriety of the answer. Counsel were not responsible for it, and all that the court could do would be to caution the jury as to the use to be made of it, and that it is presumed was done.

If the facts offered to be shown by Chandler were admissible, and it was error to exclude them (which it is not necessary to pass upon), such error was rendered harmless by the verdict of the jury. The evidence was offered as bearing upon the question of undue influence; the use that the proponent proposed to make of it was to negate the claim made by the contestant that the will was procured by undue influence, and the jury found that it was not so procured.

The judgment is affirmed, and ordered to be certified to the Probate Court.