## IN RE ALMIRA E. COWDRY'S WILL.

### October Term, 1904.

Present: ROWELL, C. J., TYLER, MUNSON, START, WATSON, and HASELTON, JJ.

### Opinion filed March 9, 1905.

*Wills—Undue Influence—Confidential Relations—Guardian and Ward—Presumptions—Testamentary Capacity—Adjudication as Non Compos—Adjudication of Mental Incapacity to Care for Self and Property—Evidentiary Effect.*

A person who is adjudged a *non compos* and placed under guardianship as such, is thereby rendered *prima facie* incapable of making a will while the adjudication remains in force. .

But a person who, under No. 58, Acts 1898, is merely adjudged incapable of taking care of himself and his property, and placed under guardianship as such, is not thereby rendered *prima facie* incapable of making a will while such adjudication remains in force.

In the trial of a case, a legal presumption should be used as a piece of evidence, and weighed as such, in behalf of the party in whose favor it operates, regardless of whether it arises from evidence, or exists independently of evidence.

The law presumes undue influence when a ward makes a will in favor of his guardian.

This presumption does more than shift the burden of proof in respect of undue influence, from the contestants to the guardian. It establishes, *prima facie*, the existence of such undue influence so as to defeat the will, unless and until it is overcome by counter proof, and should be used as a piece of evidence in favor of the contestants.

APPEAL FROM A DECREE OF THE PROBATE COURT establishing an instrument as the last will and testament of Almira E. Cowdry. George Wheeler, proponent. Henry C. Holmes and others, contestants. Trial by jury at the March Term, 1903, Washington County, *Stafford,* J., presiding. Verdict and judgment for the proponent. The contestants excepted. The opinion states the facts.

*T. J. Deavitt, E. H. Deavitt,* and *Senter & Senter* for the contestants.

The law presumes undue influence when a ward makes a will in favor of his guardian. *Breed* v. *Pratt,* 18 Peck 115; Richmond's Appeal, 59 Conn. 286, 21 Am. St. Rep. 85; *Meek* v. *Perry,* 36 Miss. 190; Note to *Thompson* v. *Thompson et al.* 1 Probate Rep. An. 117; *Garvin, Admr.* v. *Williams,* 46 Mo. 465, 100 Am. Dec. 314 and note; *Thompson* v. *Hawks, et al.,* 14 Fed. Rep. 902 and note; 1 Woerner Am. Law of Administration § 32; Worrall's Appeal, 1 Atl. Rep. 380 and note; *Wade* v. *Pulsifer,* 54 Vt. 45; *Moore* v. *Spier,* 80 Ala. 129; *Yardley* v. *Cuthbertson,* 108 Pa. St. 395.

*George W. Wing,* and *Plumley & Plumley* for the proponent.

The adjudication that the testatrix was incapable of caring for herself and property, does not render her *prima facie* incapable of making a will. *Robinson* v. *Robinson,* 39 Vt. 370; *Manley's Exr.* v. *Staples,* 65 Vt. 370; *Rice* v. *Rice,* 50 Mich. 448.

ROWELL, C. J.   Before the passage of No. 58, Acts of 1898, the statute provided for the appointment of guardians only of spendthrifts, insane persons, and certain absconding persons.   Section 2760 mentions such guardians by name, and defines their authority and control.   Section 7 provides that the words, "insane persons," shall include every idiot, *non compos,* lunatic, and distracted person.

A person who is adjudged a *non compos,* and placed under guardianship as such, is thereby rendered *prima facie* incapable of making a will while the adjudication remains in force.   *In re Wheelock's Will,* 76 Vt. 235, 56 Atl. 1013.   The act of 1898 was passed as an addition to V. S. 2760, and provides that guardians of persons who have been adjudged mentally incapable of taking care of themselves or their property by the probate court appointing them, shall, until they are discharged, have the possession and management of the estates of their wards, and the care and custody of their persons, etc.   It is apparent that it was the purpose of this amendment to enlarge the scope of the statute, and to add thereto a new class of persons over whom guardians could be appointed; and such must be taken to be its effect,—for it can have no other,—as it is not to be declared nugatory if it can be held effective.   This amendment was undoubtedly prompted by the well known fact that many persons, and especially old persons, were willing to have a guardian, but were not willing to submit to an adjudication that would class them as insane, as was the case with this testatrix.   Hence the

amendment recognizes a difference between a *non compos* and
his class, and a person merely lacking mental capacity to take
care of himself or his property.   The mind of a *non compos*
is to be taken, *prima facie,* as insane and nondisposing, while
the mental incapacity of the amendment does not imply such
a mind, but may well be taken, *prima facie,* to consist with a
sound and disposing mind and memory.   This case is a good
illustration of the utility of the amendment.   The testatrix
was very old and infirm, and had long been a town charge.
All at once and unexpectedly she fell heir to $6,000.   No won-
der she did not know what to do with it, nor how to take
care of it,   But this does not make against her mental sound-
ness, but only against her mental ability to meet the require-
ments of her new condition, and hence the necessity of a
guardian.

We hold, therefore, that the adjudication of her mental
incapacity to take care of herself and her property, and the
appointment of a guardian thereunder, did not render her
*prima facie* mentally incapable of making her will.

The executor and proponent of the will is the principal
beneficiary under it, and was guardian of the testatrix before
and at the time the will was made.   The contestants requested
a charge that the law presumes undue influence when a ward
makes a will in favor of her guardian, and views the act with
suspicion.   The court refused, but charged instead that the
burden was on the guardian to show no undue influence on
his part.   This was not enough.   The presumption of undue
influence, which the law undoubtedly raised, did more than to
take the burden of proof from the contestants and place it
upon the guardian.   It established, *prima facie,* the existence
of such influence, and was sufficient to defeat the will unless
and until it was overcome by counter proof, and should have
been used as a piece of evidence, and thrown into the scale

and weighed as such in favor of the contestants.  The nature, force, and effect of legal presumptions, and their proper place in the law, have been much discussed.  The French Civil Code calls all presumptions, consequences that the law or the judge draws from a known fact to an unknown fact; and a legal presumption, one that a special law applies to certain acts or certain facts.  Cachard's Translation, Articles 1349-1350.

Prof. Thayer says that disputable presumptions of law do not belong to the law of evidence, but to a much larger topic, the topic of legal reasoning in its application to particular subjects; that they are aids to reasoning and argumentation, and assume the truth of certain matters for the purpose of some given inquiry; that they may be grounded on general experience, or probability of any kind, or merely on policy and convenience; that on whatever basis they rest, they operate in advance of argument or evidence, or irrespective of them, by taking something for granted—by assuming its existence; and that the exact scope and operation of these *prima facie* assumptions are, to cast upon the party against whom they operate the duty of going forward in argument or evidence on the particular point to which they relate; but that they are not in themselves either argument or evidence, although for the time being they accomplish the result of both.  Prelim. Treat. on Ev. 314.

But the Supreme Court of the United States takes a very different view of this question in *Coffin v. United States,* 156 U. S. 432, 452-460, where it is held on full consideration and without apparent dissent, that the presumption of innocence is evidence in favor of the accused, introduced by the law in his behalf; and this, upon the broad principle that all legal presumptions are evidence giving rise to resulting proof to the full extent of their legal efficacy.

This case is sharply criticised by Prof. Thayer on this point, who says that it cannot lay claim to the amount of learning and careful research that have been accorded to it, and is not entitled to its own claim of exactness of discrimination and searching and fundamental examination of the nature of the question, nor to the character of a leading and, in some degree, a final discussion of a peculiarly vexed and difficult subject. Prelim. Treat. on Ev. 566, 570.

Though it may be thought that the exposition and reasoning in the Coffin case counted for little in the mind of the Court in *Allen v. United States*, 164 U. S. 492, 500; yet in *Kirby* v. *United States*, 174 U. S. at p. 55, it will be seen that the Court adopted the doctrine of the Coffin case on this point, and held precisely the same thing. This is the latest utterance of that Court on this subject that we have seen, and would seem to settle the question there.

But whatever may be said as to the comparative merits of these two views, and it must be conceded that Prof. Thayer's has much to recommend it,—the view we have above expressed has become so embedded in our law that it is thought better to let it remain, as it works well enough in practice, and is sustained by the highest Court in the land and by many state courts.

*Bradish* v. *Bliss,* 35 Vt. 326, was trespass for purposely burning a barn. The court charged that the presumption of innocence was in the case, and had its influence, and that more proof was necessary to warrant a verdict of guilty than would otherwise be required, and enough more to overcome that presumption. This charge was sustained; and the Court referred to the then recent case of *Briggs* v. *Cooper,* unreported, where it was said to be held that the presumption of innocence is a matter to be weighed in favor of the party for

whom it operates, and to be overcome by the evidence of the other party.

*Weston* v. *Gravlin,* 49 Vt. 507, may not be in accord with *Bradish* v. *Bliss;* but in *Fire Association* v. *National Bank,* 54 Vt. 657, the holding in *Bradish* v. *Bliss* was approved and followed. There the request to charge was that the plaintiff must overcome, not only the defendant's evidence, but also the legal presumption of innocence of one Hopkins, which operated in favor of the defendant. The Court said the defendant was entitled to the charge called for by the request.

In *Childs* v. *Merrill,* 66 Vt. 302, 308, 29 Atl. 532, the defendant requested a charge that he was entitled to have the presumption of innocence weighed in his favor. The jury was told that the case must be disposed of "upon a consideration of all the facts and circumstances of the case appearing in evidence," thus excluding the presumption of innocence; and held error. The Court there said that *Weston* v. *Gravlin,* 49 Vt. 507, is not in accord with our other cases.

*McKinstry* v. *Collins,* 76 Vt. 221, 56 Atl. 985, was case for assault and battery of plaintiff's wife. The defendant justified under process as an officer, and requested a charge that the law presumes he did not commit the assault, and that he did his duty in serving the process, and that these presumptions stood with him until they were overcome by the evidence; and it was held that the request was sound law.

It is true that in the cases referred to ,the presumption considered was that of innocence, which exists without evidence, whereas here the presumption arises from the evidence. But that makes no difference, for both presumptions are based, in their policy, upon the probative strength, as matter of reasoning and inference, of the evidentiary fact that is assumed in one case and proved in the other; but the pre-

sumption is not the fact itself nor the inference itself, but the legal consequence attached to it, so they are equally rules of law in both cases, and to this extent the matter is in the hands of the court and not at all in the hands of the jury, and their essential character and operation, as far as the law of evidence is concerned, are the same in both cases.

Most of the other exceptions relied upon in argument are to the refusal of requests to charge, based upon the legal proposition contained in the request just disposed of, and are governed by that holding. Some of the other requests are manifestly unsound, and some were complied with as far as they ought to have been. But it is unnecessary to consider them in detail.

*Reversed and remanded.*

*Munson,* J., would embrace this opportunity to depart from the rule that has heretofore prevailed in this State, believing it to be incorrect; and therefore dissents on the second point.

*Haselton,* J., thinks a distinction should be made between presumptions, like the presumption of innocence, that exist independently of evidence, and presumptions that are generated by, or arise from, evidence; and therefore dissents on the second point.