### W. C. SHELDON *v.* J. F. WRIGHT.

October Term, 1906.

Present: ROWELL, C. J., TYLER, WATSON, HASELTON, and POWERS, JJ.

Opinion filed October 5, 1907.

*Physicians and Surgeons—Malpractice—Evidence—Necessity of Expert Testimony—Force and Weight of Expert Testimony —Complaints of Suffering—Experiments—Probative Presumptions—Exception—How Properly Taken — Instructions.*

When during a trial counsel want evidence excluded, it must be objected to, and then the party against whom the court rules may take an exception, but counsel's occasional ejaculation of the word "exception," as evidence is being received, raises no question for the decision of the court, and reserves nothing for review.

In an action against a surgeon for malpractice in treating a broken leg, it appearing that plaintiff called defendant to treat the leg because plaintiff's employer, who was obligated to furnish him needed medical and surgical services, designated defendant to perform them, plaintiff was properly allowed to take defendant's testimony to the effect that for such services he received a yearly salary from plaintiff's employer, and that his compensation did

not depend on the number of cases he treated, except that in some cases his salary was increased.

Plaintiff was properly allowed to testify that, some time after his case had been discharged by defendant, another physician put a plaster cast on his leg, that he wore this about two weeks, and that it assisted him in travelling.

Plaintiff was entitled to testify that at the time of the trial he was unable to run and travel on the injured leg as he could formerly.

In the trial of an action for malpractice in treating a broken leg, it was not reversible error for the court to remain in the courtroom at the bench, the end of which was but a few feet from the connecting door of an adjoining room, and allow the jury to retire to that room and there, in the presence of defendant and his counsel, to examine plaintiff's leg, the connecting door being closed for a very short time, and left partly open during the remainder of the examination, but not enough so that any one in the courtroom could see the proceedings in the adjoining room.

In an action for malpractice in treating a broken leg, where plaintiff, in answer to questions in cross-examination, testified that, some time after his case had been discharged by defendant, he went to Boston to see what he could have done for his leg, saw a physician there, but had nothing done, it was not, in the circumstances, harmful to defendant to allow plaintiff to testify, on redirect-examination, that the reason why he had nothing done for his leg in Boston was because the physician there advised against an operation then, that he said, "he would have to cut it open, chisel the bone off and wire it together, advised me not to have it done until cooler weather, blood poisoning was liable to set in, and he wanted $100 to do the job."

The testimony of plaintiff's brother that, some time after defendant had discharged plaintiff's case, and in consequence of a talk between the witness and a local physician, he furnished plaintiff money wherewith to go to Boston to consult a surgeon about his leg, though wholly immaterial, was harmless to defendant.

In an action for malpractice in treating a broken leg, plaintiff's daughter having testified that every day her father complained of his leg's paining him, she was properly allowed further to testify that when he came home at night he "usually" took the leather and bandages off the leg and said, "it gets tired," as those doings and complaints fairly related to the time they were done and

made, the word "usually" being chosen to denote merely the frequency of the complaints.

In an action for malpractice in treating a broken leg, it was proper to allow one of defendant's medical experts to state, in cross-examination, that the bearing of the two fragments of the broken bone, as shown by an x-ray picture of plaintiff's leg and already in evidence without objection, was not exactly in line.

Although the experiment was not a felicitous one for evidentiary use, it was not error, as against defendant's mere general objection and exception, to allow plaintiff's wife to testify that about two weeks after defendant discharged plaintiff's case, she put her fingers on the floor, that plaintiff then placed the foot of his injured leg upon her fingers and pressed with his foot until he complained that it hurt him, thereby showing her how much weight he could bear on that foot.

A question in cross-examination, so framed as practically to assume what the witness has not testified to, was properly excluded.

In an action for malpractice in setting and treating a broken leg, on which defendant had used a certain large splint, in respect of the fitness of which for that purpose the evidence was conflicting, although defendant testified that he was a regular graduate in medicine and surgery and had been in practice thereof for thirty-three years, that he had large experience in the reduction, setting, and treatment of fractures, including the kind plaintiff had suffered, and for such fractures had made extensive use of the splint in question, the court properly excluded his offer to show by himself that his treatment of fractures, during the thirty-three years prior to his treatment of plaintiff's injury, had been the same as his treatment of that injury, and that the results had always been good.

Since, throughout the taking of the evidence, both parties proceeded on the theory that the test of defendant's liability was whether he had met the requirements of "good surgery," defendant cannot complain for that the court also proceeded on that theory in its rulings as to the admission and exclusion of evidence.

The court properly refused defendant's requested instruction that, in passing on his treatment of plaintiff's leg, the jury should consider only the expert evidence, defendant's own testimony, and whatever declarations and admissions he had made.

Since the evidence of the results of defendant's treatment of plaintiff's leg did not stand alone, but was inextricably interwoven

with a large amount of medical and other testimony, the court properly refused defendant's requested instruction, "that the results of defendant's treatment of plaintiff's leg are in themselves alone not the slightest evidence of defendant's negligence or want of skill."

Defendant's requested instruction that "the negligence or lack of skill of the defendant is not to be tested by the results of the treatment" was sound, and was substantially complied with.

In an action for malpractice in treating a broken leg, there can be no recovery without medical expert testimony tending to show defendant's lack of the requisite care and skill.

In an action for malpractice, where the medical expert testimony was conflicting, the court properly instructed the jury that they should exercise their judgment in considering and weighing such testimony, as they would in considering any other kind of evidence; and the instruction, "but you are not bound to accept the statements or conclusions of expert witnesses," was not, in its connection, objectionable as allowing the jury to disregard such evidence, if they chose.

There are probative presumptions, and there are rules of law, frequently termed "presumptions," which, as such, are merely *locative,* and without probative force,—their office being performed when they have placed upon the respective parties their appropriate duties.

In an action for malpractice, though defendant's negligence is not presumed, but the burden is on plaintiff to show such negligence, there is no presumption that defendant had or exercised the requisite degree of skill and care.

CASE for malpractice in setting and treating a broken leg. Plea, the general issue. Trial by jury at the September Term, 1905, Orleans County, *Munson,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The defendant discharged the case March 30, 1904. The opinion sufficiently states the case.

*J. W. Redmond* and *B. F. D. Carpenter* for the defendant.

It was error to allow plaintiff's daughter to testify that when defendant came home at night he usually took the band-

ages off the leg "and he says it gets tired." The testimony of such a witness is confined strictly to such complaints, expressions, and exclamations as furnish evidence of a present existing pain. *Plummer* v. *Rice,* 71 Vt. 118; *State* v. *Fournier,* 68 Vt. 262; *Knox* v. *Wheelock,* 54 Vt. 150; *Kidder* v. *Bacon,* 74 Vt. 263.

Defendant's offer to show that he had made successful use of the splint in question in the treatment of such fractures was improperly excluded. *Darling* v. *Westmoreland,* 52 N. H. 405; *Brown* v. *R. Co.,* 22 Q. B. D. 391; *Cleveland R. Co.* v. *Wynant,* 114 Ind. 525; *Topeka Water Co.* v. *Whiting,* 58 Kan. 639; *Hill* v. *R. Co.,* 55 Me. 438; *Crocker* v. *McGregor,* 76 Me. 282; *Bemis* v. *Temple,* 162 Mass. 324.

It was error to allow plaintiff to testify that he could not "run and travel" on the injured leg as he could formerly, and that he did not have so free use of his ankle as before the injury. This exacts too much of defendant. A physician or surgeon does not insure a cure, but is only required to have and use the requisite degree of care and skill. *Hathorn* v. *Richmond,* 48 Vt. 557; 22 Am. & Eng. Enc. 800; *Pike* v. *Hornsinger,* 155 N. Y. 201; *Jewett* v. *Buck,* 78 Vt. 356, 93 Am. St. Rep. 657; *Ewing et al.* v. *Goode,* 78 Fed. 442; *Wood* v. *Baker,* 49 Mich. 295; *Sims* v. *Parker,* 41 Ill. 284; *Piles* v. *Hughes,* 10 Iowa 579; *Wurdeman* v. *Barnes,* 92 Wis. 206; *Pettigrew* v. *Lewis,* 46 Kan. 78; *Craig* v. *Chambers,* 17 Ohio St. 253; 3 Wharton & Stiles, Med. Jur. (15th ed.) §466; note in 93 Am. St. Rep. 657-669.

The charge allowed the jury, if they chose, to lay the medical expert testimony out of the case. This was error. Whether defendant exercised the requisite degree of care and skill should have been determined from the expert evidence alone. *Carstens* v. *Hauselman,* 61 Mich. 426; *Bigney* v. *Fisher* (R. I.), 59 Atl. 72; *Baker* v. *Lane* (R. I.), 49 Atl. 963; Wharton & Stiles, Med. Jur. (5th ed.) §514; *City of Kansas* v. *Hill,* 80 Mo. 523; *Washburn* v. *Railroad,* 59 Wis. 364; *In Re Cowdry,* 77 Vt. 359.

The law presumes that defendant did his duty, and the jury should have been so instructed. *State* v. *Housekeeper,* 14 Am. St. Rep. 342, 16 Atl. 382; *Stiles* v. *Tyler* (Conn.), 30 Atl. 165; 2 Best Ev. (Wood's Ed.) §348.

*Young & Young* for the plaintiff.

Defendant reserved no question by merely ejaculating the word "exception." 1 Wig. Ev., §§18, 20; Fitnam Trial Proc., §649; *Clarkson* v. *Hodges,* 65 Vt. 273; *Wead* v. *St. J. etc. R. Co.,* 66 Vt. 420; *Laurent* v. *Vaughn,* 30 Vt. 90.

It was not error to allow the jury to examine plaintiff's leg in the judge's room. That was but the ordinary case of allowing the jury to view the subject-matter in question. 3 Wig. Ev., §2194.

The court properly allowed plaintiff's daughter to testify that plaintiff complained of the pain in the injured leg, and that at night when he unbandaged it "he says it gets tired." *Mayo* v. *Wright,* 63 Mich. 32; 3 Wig. Ev., §§2208, 1718; *State* v. *Davidson,* 30 Vt. 383; *Bagley* v. *Mason,* 69 Vt. 175; *Hawkes* v. *Chester,* 70 Vt. 271.

The court properly excluded defendant's offered evidence as to the results of his use of the splint in question in other cases. *Link* v. *Sheldon,* 136 N. Y. 1, 9; *Leighton* v. *Sargent,* 31 N. H. 119.

The results of the treatment, in connection with other proved facts, do tend to show malpractice, though the results alone have no such tendency. 3 Wharton & Stiles Med. Jur. 523; *Hickerson* v. *Neely,* 21 Ky. Law Rep. 1257.

HASELTON, J. This was an action of case for claimed malpractice. In the evening of January 30, 1904, the plaintiff, Mr. Sheldon, at Barton Landing, where he lived and was in the employ of the E. L. Chandler Company, suffered a fracture of the tibia of his right leg. The fracture was oblique as distinguished from transverse. The plaintiff's family physician, Dr. Parlin, was forthwith called and then set the fractured bone. Dr. Parlin attended to the leg until February 2, 1904, when Dr. Wright, the defendant, was called by Mr. Sheldon, and took the case. Dr. Wright was a physician and surgeon in practice at Barton Landing, and was called by Mr. Sheldon because his employer, the Chandler Company, whose contract duty it was to furnish the medical and surgical services required, designated Dr. Wright to perform them.

Subject to objection and exception the plaintiff was allowed to take the testimony of the defendant to the effect that he drew a yearly salary from the company, and that his compensation did not depend upon the number of cases he treated for the company, except that in some cases the company added to his salary. In this there was no error. The plaintiff had the right to call the defendant to the witness stand, and, with the privileges of cross-examination, to inquire into his relations to this case, and, since his relations thereto involved his relations to the Chandler Company, to inquire into those so far as the above recital shows that they were inquired into.

Subject to objection and exception the plaintiff testified that some time after his case had been discharged by the defendant, Dr. Longe of Newport put a plaster cast upon the leg, that this was worn about two weeks, and that it assisted the plaintiff in getting about. This testimony was properly heard. The history of the leg from the time of the fracture to the trial, the treatment it had received and the results thereof, whether beneficial or injurious, were calculated to throw light both upon the question of liability and upon the question of damages. After giving his testimony as to the Longe cast, the plaintiff gave similar testimony as to a cast put on by Dr. Hardwick, and as to one put on by Dr. Parlin. While the testimony as to the Hardwick and Parlin casts was being taken, the defendant's counsel at three different times uttered the word "exception." The course taken by counsel called for no ruling by the court, the court made none and the defendant has nothing to complain of. If counsel really want evidence excluded it must be objected to. Then, if the objection made is overruled, the objecting party may take an exception, and if the objection is sustained, the other party may take an exception. In the taking of testimony the occasional ejaculation of the word "exception" is in the nature of a running and unfavorable comment on the proceedings, and nothing more. It raises no question for the decision of the court and reserves nothing.

Other claimed exceptions to the admission of evidence stand as do those last considered. It may be said here, once for all, that those are not further noticed. However, all the substantial questions sought to be raised by the defendant were at

some stage of the trial properly raised and so have been considered.

Subject to objection and exception the plaintiff testified that he was not able to run and travel on the leg as formerly. The objection was that the condition of the leg at the time of the trial, its condition as to strength and how it compared with what it was before it was broken had no tendency to show any negligence on the part of the defendant. But upon any theory as to what would and what would not tend to show negligence, it would have been impracticable, undesirable and improper to keep from the jury the condition of the leg at the time of the trial, its condition before the fracture, and the nature of the fracture, to say no more. These things were essential to make intelligible the expert evidence on both sides.

At a point in the examination of the plaintiff, his counsel expressed a wish to then show the leg to the jury. Thereupon the court suggested that the exhibition be made in the judges' room, and said that for that purpose the judges' room would be treated as a part of the court room. Arrangements as to the presence of counsel and medical men were made at the bench, and the jury were sent into the judges' room, whither they were accompanied by two of the defendant's counsel, who remained there until the jury returned. After a little, the defendant went in. Soon after that the attention of the court was called to the fact that the door into the judges' room was closed, whereupon the court had it partly opened, but not enough so that any one in the court room could see the proceedings in the judges' room. The presiding judge remained at the bench, the end of which was but a few feet from the connecting door, until the jury returned. No objection was made to the examination of the leg by the jury, but we think that a fair construction of the recital in the bill of exceptions is that it was under the defendant's objection and exception that the examination was had in the judges' room.

It does not clearly appear what motive influenced the court in directing the observation of the leg to be had in the judges' room, although there may have been some reason not made apparent. In any event it would have been well for the court to have been in the judges' room with the jury. However, it is

clear that the defendant's cause was not harmed in consequence of the place of the examination. Had anything improper taken place or been attempted the defendant's counsel in the jury room could have made an objection to the court as readily as though the proceedings had taken place with the jurymen in their seats. Indeed, it often happens that a large map or plan is displayed and explained to the jury in such a manner that the jurymen, or a part of them, are screened from the view of the court, which then has little if any more opportunity of knowing what is going on than the court had during the episode in question. It is not infrequent that things are done in the presence of the jury which the court does not see, and still oftener, perhaps, that things are said which the court does not hear. Desirable as it is that an incident like that under consideration should be avoided, error cannot be predicated upon anything that appears in reference thereto. The manner in which a trial court meets the various emergencies that it has to encounter is not to be judged by any utopian standard. Here, the attitude, position and supervision of the court were such that in a practical sense the proceedings were all before the court. The circumstance of the shutting of the door has no substantial weight, since it fairly appears that it was no sooner shut than it was opened.

In response to questions put to him on cross-examination the plaintiff testified that he went to Boston in May, 1904, that he went there to see what he could have done for his leg, that he saw a physician there, but that he had nothing done for his leg. The fact that in May, 1904, the plaintiff's leg was in such a condition that he was able to go to Boston was probably material, but it is difficult to understand why testimony was elicited to the effect that he went there to see what he could have done for his leg, that he saw a physician, and had nothing done, unless it was that the jury might infer that the physician thought the leg well enough as it was. However this may be, the plaintiff's counsel could not be expected to leave the matter as defendant's counsel had left it, and in fact they were not content so to leave it. To show what ensued we quote from the exceptions as follows:

"On re-direct examination the plaintiff was allowed to testify and did testify as follows, subject to the objection and exception of the defendant:

Q.   Why didn't you have anything done in Boston?

Redmond:—We asked him if he went to Boston and he answered it.   We except if the answer relates to any conversation.

A.   The doctor advised me not to have anything done at the present time, said he had got to cut that open——

The Court:—This comes in subject to exception.

A. (con.)   He said he would have to cut it open, chisel the bone off and wire it together, advised me not to have it done until cooler weather, blood poisoning was liable to set in and he wanted $100 to do the job.

Q.   It was because of the advice he gave you, you did not then attempt to have it done?

A.   Yes, sir."

The question, "why didn't you have anything done in Boston?" was a proper one.   The answer went beyond what was proper, and was objectionable because of its hearsay character. It is argued by the plaintiff that the well established rule that an exception does not lie to an improper answer to a proper question applies here.   The rule invoked is certainly well established.   *Lynds* v. *Plymouth*, 73 Vt. 216, 50 Atl. 1083; *Plumer* v. *Ricker*, 71 Vt. 114, 41 Atl. 1045; *Hanks* v. *Chester*, 70 Vt. 273, 40 Atl. 727; *State* v. *Marsh*, 70 Vt. 288, 40 Atl. 836; *Cutler* v. *Skeels*, 69 Vt. 154, 37 Atl. 228; *Foster's Exr.* v. *Dickerson*, 64 Vt. 233, 24 Atl. 253; *Lawrence* v. *Graves' Est.*, 60 Vt. 657, 15 Atl. 342; *Frary* v. *Gusha*, 59 Vt. 257, 9 Atl. 549; *Houston* v. *Russell*, 52 Vt. 110; *Morse* v. *Richmond*, 42 Vt. 539; *Randolph* v. *Woodstock*, 35 Vt. 291.   This rule, while well established, is not strictly applicable here since the exceptions recite that the testimony above quoted came in subject to objection and exception.   Yet the above cases have been collected and referred to as they have a strong bearing upon the question under consideration.   The interrogatory which brought out the objectionable answer was a proper one, and the plaintiff went on to tell why he didn't have anything done to his leg, in the way most natural for an unprofessional witness and nobody tried to stop him or to have him stopped.   It would have been better if the

court had stopped him instead of saying "this comes in under exception." It would have been better if his counsel had stopped him, but it is to be noted that his counsel were inquiring about a matter opened up by the defendant and so cannot be assumed to have known any better than the defendant's counsel or the court but that each clause of the answer would be the last. It would have been better if defendant's counsel had not remained quiescent instead of relying upon the qualified objection made before the answer was begun. When the answer was finished neither side moved to have it disregarded by the jury, and the court said nothing to the jury about it, though on request the court undoubtedly would have dealt with the matter promptly and satisfactorily. The matter having been left as it was, the real question for this Court is, was the answer harmless? Upon an examination of the answer it is seen that it related to the doctor's explanation of the nature of the operation of resetting, the reason for not doing such an operation in warm weather and a suggestion of what the doctor would charge in case of an operation. Not a word of the doctor's was recited in condemnation of the original operation; the suggestion of the possibility of blood poisoning in case he operated in May, did not indicate any danger of it without an operation, and if it reflected on anybody's surgical skill, it reflected on that of the Boston doctor himself. In view of the inquiries put in behalf of the defendant, the plaintiff had a right to say that he had nothing done to his leg then because the doctor advised delay, if that was his reason; or, if it was true, to say that he had nothing done in consequence of what the doctor told him his charges would be if he operated then; or if both reasons influenced his mind he had a right to assign both. He gave his reasons in an improper way, but this Court cannot conceive that the form in which they were given was a factor in the defeat of the defendant, or that any part of his answer which did not relate to such reasons was in any way harmful to the defendant. As is apparent, the disposition here made of this matter renders it unnecessary to consider whether or not the answers and interpolations of a testifying party should be treated otherwise than those of a mere witness.

Frank Sheldon, a brother of the plaintiff, testified, under objection and exception by the defendant, that in consequence

of a talk that he had with Dr. Longe he furnished the plaintiff some money with which to make the trip to Boston above referred to. The plaintiff's claim is that this evidence was admissible as bearing upon the reason why he did not have an operation performed in Boston, and as corroborating his testimony as to why he went to Boston. The defendant's claim is that it was immaterial to any issue, and that it was prejudicial in that it was an appeal to the sympathy of the jury for a man in financial distress. To this Court it seems entirely clear that it was too remotely related to any issue in the case to be material, and altogether too colorless to be harmful.

The plaintiff's daughter testified that every day her father complained of his leg paining him. Then under objection and exception she testified that when he came home at night he usually took the leather and bandages off it and said, "it gets tired." These doings and complaints, as testified to, fairly related to the condition of the leg at the times they were done and made. The evidence tended to show that at the times referred to he was taking off the leather and bandages because the leg was then tired. The use of the word "usually" is criticised, but the word was used merely to denote the frequency with which the complaints testified to were made. In receiving the testimony of the daughter there was no error.

An X-ray picture of the plaintiff's leg was in evidence without objection. This was shown to one of the defendant's medical experts, and, under objection and exception, he was allowed, in substance, to state that the bearing of the two fragments of the broken bone as shown by the picture was not exactly in line. The defendant's counsel claim that this testimony was erroneously received because the jury could tell about that matter as well as any expert. But the doctor was using the picture for the purpose of demonstration and could rightly point out the things which his practiced eye discovered so far as they were of significance. It was as though the expert had used the leg itself for the purpose of explaining its condition to the jury. The picture is referred to, and an examination of it is quite convincing of the propriety of medical testimony as to what it really shows. *State* v. *Wetherell*, 70 Vt. 274, 40 Atl. 728, in which a difficult communication was properly deciphered by a witness, is in point.

The plaintiff's wife testified that one day between March 30 and April 18, 1904, she put her fingers on the floor, and her husband put his foot on her fingers and showed her how much weight he could bear, that he pressed on the foot until he complained that it hurt him to do so. The above testimony of the wife was taken under a general objection and exception. The objections presented on the defendant's brief are that this experiment in the presence of his wife was a self-serving declaration, and that his complaint then made bore upon no issue in the case. The testimony tended to show that at the time referred to the plaintiff made expressions indicative of the then present condition of his leg. The testimony was not made inadmissible by the fact that the expressions were made in the course of an experiment, nor by the fact that the experiment was made in the presence of his wife. So far as concerns any objection made in argument, the matter stands much the same as would testimony by his wife that he walked across the floor in her presence and while so doing complained of present suffering. Expressions of present pain and suffering are not in the class of self-serving declarations. Had the witness undertaken to gauge the amount of weight he showed her he could bear, there would have been something to think of which has not engaged our attention. The experiment was not a felicitous one for evidentiary use, but the objection was general and points out no error in the testimony with reference thereto. ·

On the cross-examination of one Dr. Goddard a question was excluded in view of the way in which the question was framed. Counsel did not act upon a suggestion made by the court in its ruling and obviate the objection which lay in the mind of the court by modifying the question, but took an exception which is relied on. The question was hardly fair to the witness in that it practically, though not distinctly, assumed what he had not testified to; and counsel should have embraced the opportunity given to frame an entirely unobjectionable question. The aim of the court was well directed towards a just treatment of the witness, and counsel should have seconded the efforts of the court. This exception is without merit.

It appeared that the defendant had used a certain large splint on the plaintiff's broken leg, and the evidence in behalf of the respective parties differed as to the propriety and fitness

of its use. After there had been evidence both ways the defend-ant gave the testimony, and made the offer shown by the follow-ing recital in the exceptions: ''The defendant testified that he was a physician and surgeon regularly graduated in medicine and surgery; that he had been in the practice of medicine and surgery for thirty-three years; that he had had large experience in the reduction, setting and treatment of fractures, including fractures of the tibia at the junction of the middle and lower third; that for such fractures of the tibia he had made exten-sive use of defendant's 'Exhibit C'; thereupon the defendant offered to show by himself that his treatment of fractures during his said thirty-three years of experience prior to the accident in question, had been the same as his treatment of the plaintiff's said injury; and that the results of said treatment had always been good results.''

The character of the offer, following the testimony, was extraordinary. It was an offer to show, without any restriction as to their character or location, without excluding even frac-tures of the ribs or skull, that his treatment of fractures gen-erally had been the same as his treatment of the fracture of the tibia in the plaintiff's leg, which treatment included the use of the splint in question. The offer was excluded, and it is safe to say that the defendant was not harmed thereby. Whether under any offer the defendant was entitled to give evidence of his treatment of any other fractures, and of the good results of his treatment thereof is a question not raised.

By several requests the defendant asked the court to charge, in substance, that in passing on the treatment he had given the plaintiff's leg the jury must consider only the expert evidence, the defendant's own testimony and whatever admis-sions or declarations he had made. These requests were refused and rightly.

In determining the facts about the previous condition of the leg, about the injury, and about the operation and the subsequent treatment, the testimony of various non-expert witnesses was for consideration as well as the testimony and admissions of the defendant. The plaintiff himself appears to have testified to a great variety of facts relevant to the treatment. The form of these requests was varied but all were fallacious. The expert testimony would have been of no concrete value without a deter-

mination of facts, which were to be determined by a consideration of every piece of relevant evidence whatever its source.

The plaintiff introduced a lengthy deposition given by Dr. Smith of West Newton, Massachusetts, a physician and surgeon of large experience and wide observation. Many of the questions and answers in his deposition related to the proper treatment of such a fracture as that in question, to the practice in such cases of surgeons in good standing, in short, to the requirements of "good surgery," without reference to the surgical skill ordinarily possessed and exercised by physicians and surgeons practicing in the same general neighborhood as that in which the defendant practiced. Some of the questions and answers referred to were read under objection and exception on the grounds of incompetency and immateriality, some of the same class were read under objection and exception for improper assumption, and still others of like character in the respect noted were read without objection. Some testimony of the same character was elicited from the defendant's experts on cross-examination, and a part of this was under objection and exception. In argument it is urged that there should be a reversal because of this testimony with regard to the requirements of good surgery in general. This claim makes it necessary to consider how the case was tried. The bill of exceptions shows that the evidence of the defendant was directed to the claim "that the plaintiff had as good a right leg in every particular as could be expected from the best surgery." In the charge the court stated the issue between the parties as follows: "The plaintiff claims that the defendant was negligent in the setting of his leg, and in the use of proper appliances to fasten and keep it in position, and in the subsequent care of it, and that this negligence has resulted in an undue shortening of his leg, in an abnormal turning out of his toes, and in a deformity of the foot which prevents his treading evenly upon it. The defendant claims that the leg was properly set, secured and cared for, and that the results obtained are entirely consistent with good surgery, and that if they are not, the defects are due to the failure of the plaintiff to follow the instructions given him. This states in a few words what I understand to be the exact issue between the parties."

No exception was taken to this statement by the court, and no request was made for its modification. Moreover, an examination of the case satisfies us fully that the court stated the issue between the parties exactly as they had made it. None of the objections to evidence called attention to the point now made. In the deposition of Dr. Smith questions and answers which suggested this ground of objection and no other were read without objection. Questions and answers which suggested this ground of objection, were read without other objection than that there was improper assumption in the question. The questions which were objected to for incompetency and immateriality had in them some element or elements not in the questions which passed without objection, or without objection other than for improper assumption, and the discrimination can be accounted for only on the theory that the objections were aimed at such other element or elements.

One of the questions which the defendant in argument claims was improperly allowed on account of its reference to good surgery without qualification, was a question put in cross-examination to one of the defendant's experts, a surgeon of large hospital practice and experience in this country and in Europe. It related to the use of the splint which has been referred to, and which was defendant's Exhibit C. We quote the question and the grounds of objection, since in this instance they were specific, and had no reference to the question made in argument. The question was as follows:

"I call your attention to this defendant's Exhibit C. Assuming that that was put on a leg which was fractured as Mr. Sheldon's leg was, a simple oblique fracture of the tibia at the junction of the middle and lower third; that it was fastened to the leg by a strap around the splint above the knee, another strap around the splint above the ankle, and was kept there for four or five weeks without any fastening to the foot to hold it in any particular position or angle; a tendency to rotate was discovered shortly after the foot was put onto that splint; no change of treatment was made from the time the tendency to rotate was discovered until the splint was removed some four or five weeks after. In the meantime the whole foot had rolled up so the heel had raised from the splint, the side of the foot moved down so the toes began to turn over until they came to

a point where all the toes except the big toe touched the splint and the sole of the foot was rolled up as it would be in that way and nothing was done to overcome that, would you call that good surgery?''

The objection by the defendant's counsel and the grounds therefor were stated thus: ''I object. He has got the heel off the board where he would not allow me to get it. In the second place he says there was a tendency of the foot to rotate. What that means I don't know, there is no evidence of a tendency of the foot to rotate while that was on the board, as we recollect.''

Further indications that the court correctly understood and stated the issue made by the parties are found in the requests of the defendant for instructions upon the subject of ''good surgery'' in general. Throughout the taking of evidence the question of ''good surgery'' was treated as the defendant was content to have it treated, and so in that matter he has nothing to complain of.

Notwithstanding the issue the parties had made, the court very properly saw fit to make the following statement to the jury: ''A person who holds himself out to the public as a physician and surgeon is held responsible for the possession of the ordinary skill and knowledge which pertain to his profession, and to ordinary care in the exercise of that skill and knowledge. He is not required to have the highest degree of skill obtainable in the profession; nor even the skill generally shown by those whose location gives them unusual opportunities for such a practice. But he is bound to have and exercise ordinary skill, such skill as physicians and surgeons in the same general neighborhood, in the same general line of practice, ordinarily have and exercise in like cases.'' No exception was taken to the above statement, but the passage is quoted for the purpose of making it clear that this case is not a departure from the law as it has been understood and applied in this State. *Hathorn* v. *Richmond,* 48 Vt. 557; *Mullen* v. *Flanders,* 73 Vt. 97, 50 Atl. 813. In view of some expressions in argument by counsel, it may not be amiss to say that the phrase ''the same general neighborhood'' is of much broader application than would be the phrase ''the same neighborhood.''

The defendant requested the court to instruct the jury ''that the results of defendant's treatment of plaintiff's leg are in themselves alone not the slightest evidence of defendant's negligence or want of skill.'' Another request to the same effect was made. But here the evidence as to the results of the treatment did not stand alone, but was inextricably woven in with a large amount of medical and other testimony, and was so connected with the rest of the testimony that it had to be weighed therewith. There was no occasion for charging as to evidence of results standing alone. In most cases there are many things in evidence which standing alone have no probative force but which, in connection with other things which the evidence tends to prove, are significant. In such cases it is not the duty of the court to take up each piece of evidence by itself and say to the jury that standing alone it goes for nothing.

Here, as the exceptions recite, ''the evidence of the defendant tended to show that the plaintiff had as good a right leg as could be expected from the best surgery after such a fracture of the tibia as he sustained,'' and, as the exceptions further recite, evidence on the part of the plaintiff tended to show that the result was such as could only come ''from poor and unskillful surgery and treatment in the case of such an injury as plaintiff received.'' With evidence from both sides as to results as tending to indicate the character of the surgical treatment of the leg, the court could not seriously consider the requests just mentioned. The court rightly refused to comply with them.

The defendant requested the court to charge that ''the negligence or lack of skill of the defendant is not to be tested by the results of the treatment.'' The proposition contained in this request is a sound one, was applicable here, as, in general, it is in malpractice cases. It was not in terms complied with, and the question remains was it substantially complied with? The charge clearly enough was to the effect that there was no liability on the part of the defendant unless there was a failure on his part to have and exercise the requisite degree of skill, and unless damage to the plaintiff resulted from such failure; and the statement of the case and of the issues, what was said upon the question of liability and non-liability, and the tenor of the entire charge were such that the jury must have understood that the results did not test or determine the question of negli-

gence or want of skill on the part of the defendant. Since apparently malpractice cases are sometimes brought simply because of dissatisfaction with the results of a surgical operation, and since evidence of the results is usually connected with other evidence in such a way that the results can be held up before the jury in both the opening and closing argument for the plaintiff, and since the members of the medical profession are often called upon to act when disease or accident makes heavy the odds against the accomplishment of the desired result, the jury should always be made to understand in malpractice cases that results do not determine whether or not a physician or surgeon has performed his duty; and it is because the charge unmistakably conveyed the right understanding in this regard that we find no error in the failure of the court to use the exact language of the request under consideration.

The defendant excepted to the charge of the court in respect to the medical expert evidence, claiming that the jury were left to determine the matter in controversy on their own good judgment in disregard of such evidence if they saw fit. This was a case in which the testimony of the experts was conflicting, and, as applied to the case, the actual charge as to such testimony, taken as a whole, was sound in law and was a practical guide to the jury. The court said: ''The testimony of professional or scientific witnesses upon the subject of their special knowledge forms a class by itself; but it is governed by the ordinary rules. It is true that the opinion of one who has given special study to a particular subject and had large experience in connection with it, in whom you feel that you have confidence, is entitled to very careful consideration, and may be of controlling weight. But you are not bound to accept the statements or conclusions of expert witnesses. Their testimony is simply one kind of evidence, to be considered in connection with all the other evidence bearing upon the same point. In considering the testimony of an expert witness you take all his testimony together and see what the fair result of it is. You exercise your judgment in considering and weighing the testimony of an expert the same as you would in considering any other kind of evidence.'' The sentence particularly complained of in the above quotation is: ''But you are not bound to accept the statements or conclusions of expert witnesses.'' But this sentence in its con-

nection was in no way misleading. The conclusions of the experts were conflicting. If some were right others were necessarily wrong. The jury were left to determine the matter upon the whole evidence and this course was entirely right, as, in any view, the strictly expert evidence was without value, except as it was based upon facts which the jury might find from other evidence. The ordinary witness testifies as to facts about which the jurymen have or should have no knowledge of their own; but nevertheless they must apply their own good judgment to the testimony of such witnesses in determining what facts are proved. The expert in a case like this testifies to facts of a different class, or to the interpretation of facts, matters, for the most part, about which the jury are not expected to have knowledge of their own, but nevertheless they must apply their sound judgment to the comparison, sifting and weighing of such testimony and to a consideration of the sources from which it comes. In the charge here there was no encouragement of the idea, somewhere suggested, that the introduction of expert testimony constitutes chiefly an agreeable diversion, or a restful surcease of practical combat, during which all concerned in the case may be refreshed and entertained with the niceties of abstract theories and distinctions. The charge presents the sound and sober view that the jury are to hear and weigh the expert testimony, however conflicting it may be, with the same feeling of duty and responsibility as rests upon them in hearing and considering the other testimony, to the end that they may get from it all the aid it can give them in coming to a right decision of the very case in hand.

It is believed to be the law that there cannot be a recovery for malpractice in the case of an operation like this under consideration without medical expert testimony tending to show lack of the requisite skill and care on the part of the defendant. But there may be such testimony, and yet the witness giving it may display such a lack of candor, such feeling, such advocacy, he may testify in such a way as to facts which are matters of common knowledge, or which are established by the testimony of non-expert witnesses, that the jury feel that they cannot in good conscience accept his strictly expert testimony. Where in a case like this there is no expert evidence, which the jury can accept, tending to show malpractice, the jury must give a

verdict for the defendant. But there was no request on the point last suggested, and no exception to the failure of the court to charge in that regard, and apparently the medical expert testimony was of such a character that the propriety of such a charge was not suggested to the mind of any one.

We refrain from discussing the consideration to be given to expert evidence which relates to matters about which there is a considerable stock of common knowledge, yet not such full and accurate common knowledge as to render expert testimony inadmissible. So, too, we say nothing of the consideration to be accorded to undisputed and undiscredited expert testimony upon highly recondite subjects about which men in general can have no knowledge whatever.

The defendant requested the court to charge as follows: "The law presumes that the defendant had and exercised the requisite degree of care and skill; and this presumption is in the nature of evidence in behalf of the defendant, and should be thrown into the scales and weighed with the other evidence in the case making in favor of the defendant." The court did not comply with this request and the defendant excepted. The defendant further excepted, in substance, to the failure of the court to instruct the jury that the law presumes that the defendant did his duty in the premises, and to the failure of the court to charge that there was a legal presumption to that effect which was in the nature of evidence and which was to be weighed by the jury in connection with the other evidence in the case.

This Court does not, however, think that there was any legal presumption here. There was rather an absence of such presumption. Negligence was not to be presumed and the burden of showing negligence was on the plaintiff. With regard to this burden, the court charged fully and correctly. The defendant was not entitled to have the request last mentioned complied with, and the failure of the court to charge in the respects pointed out was simply a failure to wander into error. It is true that the decisions of some courts have, more or less clearly, indicated a legal presumption against negligence in malpractice cases. Such a case is *State to use of Janny* v. *Housekeeper*, 70 Md. 162, 14 Am. St. Rep. 340, 16 Atl. 382, quoted from by the defendant. But the outcome of what is said in the opinion in that case is that negligence cannot be pre-

sumed but must be affirmatively proved. In a recent malpractice case determined in Minnesota and not cited by the defendant, the court of that State say: "The ubiquitous protectorate which jurisprudence extends to all material interests and to every science and to every art takes note of our common fate, with the possibilities of failure in the professional treatment of disease, and accords the medical practitioner in every case the presumption that he has done his whole duty." *Martin* v. *Courtney*, 87 Minn. 197, 91 N. W. 487. But this somewhat vague declaration with regard to presumptions simply leads up to the conclusion that a plaintiff who alleges negligence must prove it if he would win his case.

In view of the doctrine in this State that a true legal presumption is in the nature of evidence and is to be weighed as such, *Cowdry's Will*, 77 Vt. 359, 60 Atl. 141, unguarded and inexact expressions about presumptions should here be scrupulously avoided. The defendant argues that there must be in this State the legal presumption which he asserts in favor of physicians and surgeons, since if a physician brings assumpsit to recover for professional services he is not called upon in his opening to negative lack of skill and care in his treatment. But he is not so called upon because of the application of a rule of pleading and practice which makes lack of skill and care a matter of defence. Payment is a defence with respect to which the burden is on the defendant and which need not be anticipated, but this is not because there is a presumption, in the nature of evidence, and to be weighed as such with the other evidence in the case, that no one pays what he owes, at least for twenty years, but because of rules of pleading and practice established with a view to the convenient and expeditious trial of cases.

In a civil case for assault and battery, justification in defence of person or possession need not be negatived by the plaintiff in his declaration or opening case, although an unjustifiable assault is a crime and there is a presumption against the commission of crime. The rule governing the order of proof under a plea of confession and avoidance does not rest upon the ground that there is in any proper sense a legal presumption against the facts relied on in avoidance, but the doctrine or rule that applies is drawn from considerations of convenience and dispatch. If one sues to recover the price of a horse sold

through a verbal contract which included a warranty of soundness he need not, as a part of his case, prove the warranty and the soundness. If the defendant would rely upon the warranty and its breach in defence he must take the burden of proving them. In actions upon a statute there are often provisos and exceptions which it is no part of the plaintiff's case to negative. In actions upon an insurance policy there are in general a long list of representations in the application which are in the nature of warranties, but the plaintiff need not prove the truth of them before he can safely rest. Convenience and fairness govern in these matters. It may be well enough to designate as presumptions the rules which impose the burden of proof upon the defendant with respect to such matters as have been referred to in the foregoing illustrations, but it is considered that as presumptions they are dry ones having only a technical existence, created for the purpose of temporary convenience only, and barren of all probative character when the case goes to the jury on conflicting evidence.

Such so-called presumptions merely perform automatically a part of the office of the ancient ''medial judgment,'' in that they determine what each party must do with reference to the issues joined. See Bigelow's History of Procedure in England, page 288. They are not legal presumptions within the purview of the *Cowdry Will* case, 77 Vt. 359. That case treats of presumptions which everywhere and always arise from certain facts assumed or proved, and not of such as are merely called into a transient and, indeed, fictitious existence, in order that the evidence may be confined to the real issue or issues to be tried. There are probative presumptions; and there are rules, termed presumptions, which, as such, are merely locative, their office being performed when they have placed upon the respective parties their appropriate duties.

In recent years presumptions and their functions have been the subject of much able and discriminating discussion. The doctrine of this Court is sustained by the authority of Lord Coke, who recognizes the fact that there are presumptions which the jury are to weigh ''together with other matters,'' but who classifies presumptions and says of a presumption of one class that ''it moveth not at all.'' 3 Thomas' Coke, 390, 492.

All questions fairly raised by the exceptions taken and relied on have been considered, either singly or in groups.

*Judgment affirmed.*