# LUKE TARBELL ET AL. *v.* THE VT. MUTUAL FIRE INS. CO.

*Fire insurance. Knowledge of agent. Title when application is made. Subsequent alienation. Mortgage by deed absolute.*

1. If the owner correctly represents the state of the title to "a duly authorized agent" of a fire insurance company, who thereupon makes out an application and procures from the company a policy of insurance for the owner, the policy cannot be avoided upon the ground that the title was not correctly stated in the application, for under R. L. s. 3617 the company is charged with the knowledge of the agent and would be estopped from setting up that defense.

2. But where the policy by its own conditions is to become void upon an alienation of the property, unless written notice is given to the directors, the fact that such agent had full knowledge of and assented to a subsequent alienation does not conclude the company.

3. Tarbell purchased the premises, borrowing a portion of the purchase money of Thayer. Thayer took an absolute conveyance, giving Tarbell a bond to convey upon payment of the amount due him on account of the purchase. Tarbell was to insure for Thayer's benefit, and applied to defendant's agent, correctly representing the title, who procured a policy in the name of Thayer. Subsequently Tewksbury gave Thayer his notes for the amount due him from Tarbell on account of the loan towards the purchase price and also other indebtedness. Thayer conveyed to Tewksbury and Tewksbury mortgaged back. Tarbell was to repay Tewksbury the amount for which he had become liable to Thayer, and Tewksbury was to hold the title as security. Tarbell always had possession of the premises, and neither Thayer nor Tewksbury claimed any but a mortgage interest. The policy never was assigned by Thayer. *Held*, that while the policy might at first have been valid to insure the respective interests of Thayer and Tarbell, since the title was correctly represented to defendant's agent who took the application, the subsequent transfers were an alienation of the property, which would avoid the

policy, no written notice having been given the directors in accordance with its conditions, and that the knowledge of its agent would not affect the company.

This was a bill in chancery by Luke Tarbell, Bradford A. Tewksbury and Henry C. Soper, executor of Ephraim Thayer, against the Vermont Mutual Fire Insurance Company, to reform and compel the payment of the amount due on a policy of fire insurance. Heard at the December term, 1889, Orange county, upon demurrer to the bill, with a stipulation that certain facts should be treated as incorporated in the bill. Rowell, Chancellor, dismissed the bill with costs. Appeal by the orators.

The bill as amended alleged in substance the following facts:

In 1880 Tarbell agreed with one Erskine to purchase certain premises upon which were the buildings in question. Being unable to pay the whole purchase price, he applied to Thayer for assistance, which was promised upon condition that security should be given upon the premises. Thereupon Tarbell payed Erskine a part of the purchase price and Thayer paid the balance. Erskine deeded the premises directly to Thayer. Tarbell gave Thayer his note for the full purchase price; and Thayer endorsed upon this note the amount paid by Tarbell and gave Tarbell a bond conditioned that when he had paid the balance due on the note he, Thayer, would convey the premises to Tarbell by deed warranty. This was all one and the same transaction.

The bond provided that Tarbell should keep the premises insured for the benefit of Thayer, and in accordance therewith Tarbell applied to one Orcutt, informed him fully as to the state of the title, and requested him to effect an insurance on the buildings for the benefit of Thayer. Thereupon Orcutt wrote out the application, which Tarbell procured Thayer to sign, and forwarded the same to the defendant which issued the policy in question, and delivered the same to Tarbell. The policy was in

the name of Thayer, and neither the policy nor application stated the interest of Tarbell in the premises.

In May, 1888, Thayer applied to Tarbell for the repayment of his loan, and an arrangement was made by which Tewksbury gave his notes to Thayer for the amount due, payable in instalments, and Tarbell agreed to pay Tewksbury these notes as they became due to Thayer. Thayer deeded the premises to Tewksbury by deed absolute and Tewksbury mortgaged to Thayer to secure the payment of his notes. It was agreed between Tewksbury and Tarbell that Tewksbury should hold the title as security in the same way that Thayer had done. Tarbell went into possession at first and always continued in possession, and neither Tewksbury nor Thayer claimed any interest in the premises save that of mortgagee.

It did not appear what the authority of Orcutt was farther than that he was "a duly authorized agent of said insurance company."

From the stipulation as to additional facts it appeared that the mortgage from Tewksbury to Thayer secured indebtedness from Tarbell to Thayer, for which Tewksbury had become liable, other than that on account of the original purchase of the premises in question ; that the policy had never been assigned to Tewksbury; that no written notice of these transfers had ever been given to the directors of the defendant, nor had they any knowledge of the same, nor had they ever confirmed the policy to Tarbell or Tewksbury ; but Orcutt had full knowledge of all these transfers, having been informed of them by Tarbell, and assented to them.

Upon the policy itself was this printed notice :

"Whenever any one shall alienate conditionally by mortgage, his policy shall be void unless he shall make a representation thereof in writing to the directors, stating the amount, and to whom mortgaged, who shall have power to give their assent to said mortgage, or to cancel said policy, as they shall judge proper on examination of the same."

After the transfer from Thayer to Tewksbury and the mortgage back by Tewksbury to Thayer, the premises were destroyed by fire.

*Lamb & Tarbell*, and *J. J. Wilson*, for the orators.

The knowledge of Orcutt was the knowledge of defendant, and it cannot now be heard to say that it did not accomplish by its policy what it professed to. R. L. s. 3617; *Ring* v. *F. Ins. Co.*, 51 Vt. 563.

Thayer was a mortgagee, and the effect of his conveyance to Tewksbury was simply to assign his equitable interest in the premises. It was not an alienation. *Holbrook* v. *Ins. Co.*, 1 Curt. C. C. 193.

At all events the agent Orcutt had full knowledge in the premises, and that would bind the defendant. *Packard et al.* v. *F. Ins. Co.*, 77 Me. 144; *Bodine* v. *F. Ins. Co.*, 51 N. Y. 117; *Millville Ins. Co.* v. *Mechanics Ass'n.*, 43 N. J. 652; *Ins. Co.* v. *Wilkinson*, 13 Wall. 222; *Bush* v. *Westchester F. Ins. Co.*, 2 N. Y. 629; *Woodbury Savings Bank* v. *Charter Oak Ins. Co.*, 31 Conn. 517; *Ins. Co.* v. *Myers*, 55 Miss. 479; *Murphy* v. *Southern Life Ins. Co.*, 3 Bax. 440; *O'Brien* v. *Union Ins. Co.*, 22 Fed. Rep. 486; *Silverberg* v. *Phœnix Ins. Co.*, 13 Wall. 292.

Especially as it continued to make assessments on the policy. *Bartlett* v. *Ins. Co.*, 77 Iowa 155.

*Dillingham & Huse*, and *J. D. Denison*, for the defendants.

The conveyance from Thayer to Tewksbury and the mortgage back effected an alienation of the property which, without notice to the directors, rendered the policy void. This was a mutual company, and no agent or officer even could waive a provision of the charter. *Brewer* v. *Chelsea Mutual Fire Ins. Co.*, 14 Gray 203; *Hale* v. *Mechanics Mutual Fire Ins. Co.*, 6

Gray 169 ; *Couch* v. *City Fire Ins. Co.*, 38 Conn. 181 ; *Moulthrop* v. *Ins. Co.*, 52 Vt. 123 ; *McGowan* v. *Peoples Mut. Fire Ins. Co.*, 54 Vt. 211.

The opinion of the court was delivered by

ROSS, J. The conveyance from Erskine to Thayer, and the bond from Thayer to Tarbell are parts of one transaction and are to be considered in that light. Thus considered, Tarbell was the real purchaser from Erskine and the conveyance to Thayer, absolute on its face, between Thayer and Tarbell, was only for security for the payment of the balance of the purchase money· In equity Tarbell was a mortgagor in possession, and Thayer a mortgagee holding the absolute title as security for the payment of his debt, the same as one holding under a mortgage deed, after the law day has passed. The true relation of these parties to the property, was made known—on the facts stated in the bill and admitted by the demurrer—to Orcutt, the agent of the defendant, when he made and took the application for the insurance. In making and taking the application, Orcutt was the agent of the defendant. Being fully informed, by the applicant, in regard to the true state of the title, and of the relations of Tarbell and Thayer thereto, his representation thereof in the application, bound the defendant, and estopped it from denying the truth of the representations of the title as there made. *Ring* v. *Fire Ins. Co.*, 51 Vt. 563. If these were all the facts that are contained in the orator's bill, on proper proof of loss by fire, a recovery at law could be had in an action on the policy, without the same being reformed. *Ring* v. *Fire Ins. Co., supra.* But from the agreed facts, and statements in the bill, admitted by the demurrer, it appears that subsequently to the issuing of the policy, and before the loss by fire, Tarbell's indebtedness to Thayer was taken up by the notes to Tewksbury. This discharged Tarbell's indebtedness to Thayer, and Thayer held the title solely for Tarbell's benefit. Thayer held the title to other land, in

equity belonging to Tarbell, as security for the payment of other indebtedness. Tewksbury assumed and paid both of these debts of Tarbell to Thayer. Tarbell gave his notes for both to Tewksbury, and to secure their payment had Thayer convey both parcels to Tewksbury, and Tewksbury mortgaged them back to Thayer, Tarbell taking a bond from Tewksbury for a conveyance to him, on his payment of his notes. The legal effect of these transactions was to pay and discharge Tarbell's equitable mortgage to Thayer, and to create another from Tewksbury to Thayer, and another and larger one, both in amount and property covered, to Tewksbury. Tarbell told Orcutt the defendant's agent of these transactions, and he made no objection. No knowledge of them ever came to the directors of the defendant. It is to be obvserved that no allegation is made, that Tarbell ever inquired of Orcutt what it was necessary for him to do to keep the policy of defendant alive upon. the property, nor did he request Orcutt, nor did Orcutt undertake to do anything to that end. It is manifest from this statement that R. L. 3617 does not apply. That section only binds mutual fire insurance companies for the acts and neglects of the several agents appointed by them * * "*while in the performance of their duties as the agents of said companies.*" Moreover the policy of the defendant, then held by Tarbell, though running to Thayer, contained a provision making the charter and by-laws of the defendant a part of the contract, with this by-law plainly printed thereon: "Mortgages." "Wherever any one shall alienate conditionally by mortgage, his policy shall be void unless he shall make a representation thereof in writing to the directors, stating the amount, and to whom mortgaged, who shall have power to give their consent to said mortgage, or to cancel said policy, as they shall judge proper on examination of the same." This by-law clearly points out what must be done to keep a policy alive when a mortgage is placed upon the property insured, and takes from an agent and reserves

to the directors alone, the power and right to confirm the policy. There was no compliance, or attempted compliance, by the assured with this by-law, nor any excuse shown for a non-compliance. Hence, by force of the by-law which was a part of the contract, the policy became void, by the neglect of the assured before the fire occured. It is no answer that Tarbell, who was the person beneficially insured in the name of Thayer, and who held the policy, did not ·acquaint himself with its provisions. He was bound to do so or suffer for his neglect. Neither can it be answered that this is the same mortgage which existed when the policy issued. In the equitable mortgage then existing, Tarbell was the mortgagor and Thayer the mortgagee. When the loss occurred, Tewksbury held the title to this and another lot of land as security for the payment of Tarbell's obligations to him, which were greater in amount, and covered another lot of land, than the original equitable mortgage from Tarbell to Thayer. Besides this, Tewksbury had become a new party and had mortgaged both lots of land back to Thayer to secure the payment of his notes to Thayer. The debts thus secured by new conveyances of the same and other land, were also in part new, and other than existed when the policy issued. On these facts for the Court of Equity to give the orators the relief prayed for, would be to disregard, rather than enforce, to make rather than construe, their contracts.

*The decree is affirmed and cause remanded.*