ROCHESTER GERMAN INS. CO., OF ROCHESTER, N. Y., et al. v. SCHMIDT.

(Circuit Court of Appeals, Fourth Circuit. May 9, 1908.)

No. 756.

1. APPEAL AND ERROR—REVIEW—FINDINGS OF JUDGE.

The findings of a trial judge sitting in equity ought not to be set aside on appeal, if there is legal evidence to sustain them.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 3970–3978.]

2. INSURANCE—"SOLE OWNERSHIP"—"UNCONDITIONAL OWNERSHIP."

Insured's ownership is "sole" when no one other than insured has any interest in the property as owner, and is "unconditional" when the quality of the estate is not limited or affected by any condition.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 7, p. 6545; vol. 8, pp. 7154, 7155.]

3. SAME—PROVISION FOR SOLE OWNERSHIP.

A condition in an insurance policy that, if the insured is not the sole, entire, and unconditional owner, the policy shall be void, is reasonable and valid, and a failure to disclose the real state of the title, if not sole, etc., is fatal, though such failure is unintentional.

4. SAME—NATURE OF TITLE.

Certain policies contained a clause that they should be void if the interest of the insured was other than unconditional and sole ownership, or if the subject of insurance was a building on ground not owned by the insured in fee. The title to the land in question long prior to the issuance of the policies had been transferred to insured's wife, and, she dying intestate, title descended one-third to insured and two-thirds to his daughters. Without objection from the daughters, insured had always treated the property as his own, having bought and paid for it originally. He paid taxes, built and controlled houses thereon, and collected rents, and at his own cost had placed on the property the building and machinery destroyed. He made no written application for the insurance and no representation with regard to the title of the land. Held, that the policies were void for want of unconditional and sole ownership in insured, though the condition of the title did not increase the risk.

5. COSTS—DISCRETION OF COURT—EQUITY PROCEEDINGS.

Where certain insurers, having a valid defense to certain actions on policies at law, instituted a suit in equity to determine the respective liabilities of various companies and to enjoin the prosecution of actions at law on the policies, greatly augmenting the costs, which were imposed

on the companies in the trial court by a decree against them, which was reversed on appeal, a judgment for costs at the trial should be affirmed, and the costs on appeal divided, one-half to be paid by the insurance companies and one-half by the claimant.

Appeal from the Circuit Court of the United States for the District of South Carolina.

For opinion below, see 151 Fed. 681.

John P. Thomas and John T. Seibels (Thomas & Thomas, on the briefs), for appellants.

D. W. Robinson and W. Boyd Evans (Lawson D. Melton, on the briefs), for appellee.

Before PRITCHARD, Circuit Judge, and MORRIS and PURNELL, District Judges.

MORRIS, District Judge. Frederick Schmidt, a citizen of Columbia, S. C., having erected an ice manufacturing plant on Main street in that city, effected fire insurance thereon, through resident insurance agents, to the total amount of $8,100 in the following companies, viz.:

| | |
|---|---:|
| Rochester German Insurance Company | $2,500 |
| Palatine Insurance Company, of London, England | 3,500 |
| Phœnix Insurance Company, of Hartford, Conn | 1,000 |
| Agricultural Insurance Company, of Watertown, N. Y. | 1,100 |
| Total | $8,100 |

On other adjoining land of his own in the same block Schmidt had several dwelling houses and stores, a hotel, and a laundry plant, on which he had obtained insurance through J. H. Walker & Co., resident insurance agents and bankers in Columbia, and, when he began the erection of the ice plant, he promised to give them the insurance on it, and before the ice plant began operation he took to them the estimate which his erecting engineer had made of the proper amount of insurance required, and Messrs. J. H. Walker & Co. prepared the policies. They were issued in May, 1902, insuring Frederick Schmidt against loss by fire. The items of insurance were distributed as follows, each policy covering its pro rata amount: $1,350 on brick composition roof building, occupied as an ice factory, and situated in the rear of No. 722, on the east side of Main street, page 19, block 249, Sanborn's Map of Columbia, S. C. $5,850 on machinery of all kinds, pumps, and their connections, condensers, filtering apparatus, freezing tanks, including coils in storage rooms, pipes and piping, shafting, gearing, pulleys, hangers, tools, and implements, and all other machinery and implements used in and about the premises usual to an ice factory, while contained in the above building. $750 on boilers and engines, including all connections and fixtures, foundations, and settings, while in communicating addition to the ice factory. $75 on stock of ammonia while contained in the above building. $75 on stock of salt, while contained in the above building. Total, $8,100.

The fire occurred December 30, 1902. On March 12, 1903, Schmidt assigned the policies to his wife, Nora Martin Schmidt, and he died

May 10, 1903. Proof of loss having been furnished, and the companies having denied any liability for the losses, suits at law against each of the four insurance companies were instituted by the widow and assignee, on July 17, 1903, in an appropriate state court of South Carolina, and pleas were filed by the defendants denying all liability. Two of the cases were removed by the defendants into the Circuit Court of the United States for the District of South Carolina, and the other two were not removed because the amount claimed was less than the required jurisdictional amount. Subsequently, on October 28, 1903, the Rochester German Insurance Company filed in the Circuit Court of the United States this bill of complaint, setting forth the issuing of the four policies of insurance, and that each company by said policies undertook to be answerable only for its pro rata of the loss on the items mentioned; that, if the court should hold that there was any liability for the loss sustained, it should be apportioned; that each insurer was interested in the liability of the other; and that this could only be ascertained in one suit and in a court of equity. The bill of complaint fully sets out the defenses by reason of which the complainant contends that there was no liability for the loss by fire, and prays the court to take jurisdiction and determine the respective liabilities of each of the four companies, and to enjoin the said Nora Martin Schmidt from further prosecuting the actions at law, and prays that the case be referred to a master to take testimony and make a report thereof, and for other relief.

The defendant, Nora Martin Schmidt, duly appeared and demurred to the bill, upon the ground that she was entitled to have the cases she had instituted against the four insurance companies determined in a court of law, with a jury, and that the complainant and the other insurance companies had a plain, adequate, and complete remedy and defense at law. This demurrer came on to be heard before the late Circuit Judge Simonton, and he held against the contention of Mrs. Schmidt that the court had jurisdiction to entertain the bill of complaint. 126 Fed. 998. The correctness of that decision is not before us for examination on this appeal, and cannot be considered by us. However, it is proper to bear in mind that the many questions of fact raised in this case involved almost entirely the credibility of witnesses and the weight of testimony, and were of the kind most appropriately tried by a jury; and the appellants having, against the objections of the appellee, brought these issues into a court of equity, where they were most carefully considered and determined by the learned trial judge (District Judge Brawley), his findings, like the verdict of a jury, ought not to be set aside if there is legal evidence to sustain them.

The defenses pleaded by the companies were: (1) That Schmidt represented himself as sole owner of the property, when in fact he was owner only of an undivided one-third interest therein. (2) That he represented the property insured to be worth $8,100, whereas in fact it was not worth more than half that amount. (3) That the property insured was a manufacturing establishment which had ceased to be operated for ten consecutive days. (4) That the proofs of loss

sworn to by Schmidt were informal, inaccurate, and false. (5) False swearing, in stating that the origin of the fire was unknown to him, and did not originate by any act, design, or procurement on his part, and concealment and misrepresentation of material facts in regard thereto.

The special master was appointed by an order signed on March 14, 1904, and made his report on November 27, 1906; so that, instead of the continuous progress of a jury trial, there was 2½ years spent in taking the testimony. The opinion and findings of Judge Brawley cover 10 pages of the printed record, and in it he carefully considers and determines every defense made by the insurance companies, with the result that he entered a decree against the insurance companies, on the 1st of March, 1907, amounting to $6,827.18, to be apportioned pro rata among the four insurance companies. There were filed 32 assignments of error by the insurance companies, questioning every finding even of the most incidental and unimportant fact mentioned by the trial judge in his opinion; but as there was ample evidence, if believed by the trial judge, to support every disputed fact, we shall not re-examine his findings of fact.

The only vital question of law decided by the trial judge and excepted to was with regard to the insured's title to the land on which the insured ice plant was located. The title to that part of the land on which the ice plant was placed had been, years before, deeded to his wife. She had died intestate some years before the insurance was effected. The title to the land, upon her death, descended one-third to Schmidt and two-thirds to his five daughters. Without objection from his daughters, he had always treated this property as his own. He had bought and paid for it originally, had always paid the taxes on it. He had built houses on it, and controlled them, and collected the rents, and at his own cost had placed on it the building and the machinery for the ice plant. He made no written application for the insurance and no representation with regard to the title to the land. He placed the business of insuring the ice plant in the hands of the resident agents of the insurance companies, and they, without questioning Schmidt as to his title to the land, prepared the policies on the usual standard form covering the building, machinery, and merchandise. The policies contained the clause in common use in standard policies:

"This entire policy * * * shall be void * * * if the interest of the insured be other than unconditional and sole ownership, or if the subject of insurance be a building on ground not owned by the insured in fee simple."

This express condition of the policy gives rise to a distinct question of law as to which the facts are not in dispute. The land upon which Frederick Schmidt had built the insured ice plant had been conveyed in fee to his deceased wife, and after her death, by the laws of South Carolina, he was entitled to one-third, and her five children were entitled to the other two-thirds. Does that, even though Frederick Schmidt had originally paid for the property, the title to which was conveyed to his wife, and even though he had always paid the taxes on it, and paid for the improvements he erected on it, gratify

the express condition of the policy that he was the unconditional and sole owner and that he owned the ground in fee simple?

We think that the weight of authority is that, when a policy contains this language, it is made an express condition of the validity of the policy. In 2 Clement on Insurance, p. 152, it is said:

"An insured's ownership is sole when no one else has any interest in the property as owner and is unconditional when the quality of the estate is not limited or affected by any condition."

In 1 May on Insurance, § 287, it is stated:

"A condition that, if the insured is not the sole, entire, and unconditional owner, the policy shall be void, is reasonable and valid, and failure to disclose the real state of the title, if not sole, etc., will be fatal, although the insured was not questioned as to that fact."

Schroedel v. Humboldt Fire Ins. Co., 158 Pa. 459, 27 Atl. 1077, was a case arising upon a similarly worded condition in a policy issued to John Schroedel. The court said:

"The uncontradicted evidence was that the title to the property was in the plaintiff and his wife jointly. This in the absence of any proof of fraud or mistake as to the insertion of the stipulations above quoted, was a flat bar to the plaintiff's recovery."

See. also, 13 A. & E. Encyclopædia of Law (2d Ed.) 233.

In Hartford Fire Insurance Co. v. Keating, 86 Md. 130–145, 38 Atl. 29, 31, 63 Am. St. Rep. 499, it is said:

"To be unconditional and sole, the interest must be vested in the insured, not contingent or conditional, nor for years or life, nor in common, but of such a nature that the insured must sustain the entire loss if the property is destroyed; and this is so whether the title is legal or equitable."

See, also, Wineland v. Security Insurance Co., 53 Md. 276.

For the reason that the title of Frederick Schmidt did not gratify the express condition upon which the policy was granted, the policies never took effect, and we have no right to consider, under the circumstances of this case, whether or not the disclosure of the real title would have affected the risk or the rate of premium. Hunt v. Springfield, etc., Ins. Co., 196 U. S. 47, 25 Sup. Ct. 179, 49 L. Ed. 381; Baltimore Fire Insurance Co. v. Loney, 20 Md. 20–36; Parsons, Rich & Co. v. Lane, In re Millers' & Manuf'rs' Ins. Co., 97 Minn. 98, 106 N. W. 485; Insurance Co. v. Cochran, 77 Miss. 348, 26 South. 932; Palatine Ins. Co. v. Dickenson, 116 Ga. 794, 43 S. E. 52; Scottish Union, etc., Ins. Co. v. Petty, 21 Fla. 399; Waller v. Northern Assurance Co. (C. C.) 10 Fed. 232, 2 McCrary, 637. As soon as (during the preliminary examination as to the loss) the actual state of the title was disclosed, the defendant companies tendered a return of the premiums received. The weight of authority is that in policies of this kind, where the consideration is entire, the contract is entire, and is void as an entirety. Bowman v. Franklin Insurance Company, 40 Md. 620–623; Agric. Ins. Co. v. Hamilton, 82 Md. 88–96, 33 Atl. 429, 30 L. R. A. 633, 51 Am. St. Rep. 457.

The learned trial judge, considering that Frederick Schmidt took the policy in the form in which it was tendered to him innocently and in good faith, and had an insurable interest, and had an equitable in-

fcrest in the building and machinery, which with his own money he had placed on the land with the silent acquiescence of his children, and that if the true state of the title had been stated it would not have enhanced either the risk or the premium, and that the company had asked for no information about the title, and had in no ways suggested to Schmidt that the matter of the title was material, came to the conclusion that, under all these circumstances, it would be unconscionable to hold that the policies were forfeited because an ignorant man had not stated an immaterial matter about which he had not been asked and of the importance of which he had no conception. It is with great reluctance that we differ with this equitable treatment of this case; but, in view of the weight of authorities dealing with policies containing the express condition in question, we feel that the law is settled otherwise, and that the ruling below cannot be sustained.

There remains a question as to the costs. By the bringing of these cases into an equity court, the costs have been greatly augmented. We think substantial equity will result from allowing the decree for costs below to remain as it was entered in the Circuit Court, and by dividing the costs in this court, one-half to be paid by Mrs. Schmidt and one-half by the four insurance companies, ratably.

Decree in favor of Mrs. Nora Martin Schmidt against the four insurance companies reversed, except as to the costs.

Reversed.