HARRY D. ZABARSKY *v.* EMPLOYERS' FIRE INSURANCE COMPANY.

November Term, 1923.

Present: WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed February 6, 1924.

*Fire Insurance—Proof of Loss—Necessity of Raising Constitutional Questions in Lower Court—G. L. 5567, 5569—Insured May Show No Demand Made for Proof of Loss—Insured May Show That Mortgagee Was Carrying on Business Under Name Given in Policy—Chattel Mortgages—Parol Evidence to Show Assignment—Proof of Ownership of Mortgage—Hearsay Evidence—Effect of Warranties in Policy Concerning Encumbrances—Effect of Failure to Accurately Describe Manner in Which Claim Is Held—Fraud—Effect of Presumption of Continuance of Ownership—When Evidence Insufficient to Make Ownership Question for the Jury.*

1. In an action on a fire insurance policy which provided that the insured should file a proof of loss within 60 days after loss, and where the insured did not comply therewith but filed proofs of loss subsequently, without notice from the insurer so to do, the court did not err in excluding two letters from the insurer to the insured, declining to accept the proofs because not seasonably filed, in view of the provisions of G. L. 5567, 5569, making it unnecessary for insured to file proofs unless notified in writing so to do by the insurer, the plaintiff not having relied upon the proofs of loss, nor introduced any evidence concerning them, but such proofs having been introduced by the defendant for no apparent purpose other than as a basis for the admission of the letters under consideration.

2. On review in the Supreme Court the question of the constitutionality of a statute, not raised below, will not be considered.

3. In an action on a fire insurance policy, evidence of plaintiff that he had never received a demand or notice from the defendant to furnish a proof of loss was admissible over the objection that the policy required insured to furnish proof of loss, in

view of the provisions of G. L. 5567, 5569, making it unnecessary for insured to file such proof until written demand therefor from the insurer.

4. In an action on a fire insurance policy, for loss by fire of an automobile truck on which at time of purchase a mortgage had been given the seller, where insured defended on the grounds of breach of warranty and fraudulent representations as to encumbrances, in that the mortgagee was not properly "set up" in the mortgage, the insured had a right to show that the mortgagee named in the policy was simply a different name for the seller under which its business was being carried on when the policy was issued, against the objection that this was not the proper way of proving corporate existence, to which the evidence did not relate.

5. In such a case parol evidence was admissible that the mortgagee named in the policy, and carrying on the business of the seller, owned the mortgage when the policy was issued, against the objection that there was nothing in writing about change of ownership, a written assignment or transfer of the mortgage being unnecessary in such circumstances.

6. In an action on a fire insurance policy to recover for loss of an automobile truck on which a mortgage had been taken at the time of sale, where the name of the mortgagee given in the policy was that of a company which was carrying on the seller's business under another name, to whom plaintiff claimed the mortgage had been transferred, evidence of a salesman who sold the truck and had continued his services under both companies, and collected payments on the mortgage for each, was admissible on the question of ownership, and not objectionable as hearsay.

7. Where statements in a policy relating to encumbrances amount to warranties, unless such statements are literally true the policy is void.

8. In an action on a fire insurance policy, the mere failure of the insured to accurately describe the capacity in which a claim was held on the property insured did not constitute a breach of the warranty relating to encumbrances, if the information given fully apprised the insurer that the property was encumbered, who the encumbrancer was, and the nature of the claim.

9.  In an action on a fire insurance policy, the issue of fraud and deceit in representations respecting encumbrances, the materiality of the representations, and the intent in making them were, under the evidence, for the jury.

10. Ordinarily, the presumption of continued ownership exists for temporary convenience only in fixing upon the respective parties their duty as to the order of proof, and has no probative value when evidence, conflicting or otherwise, is adduced.

11. In an action on a fire insurance policy for loss of an automobile truck, where plaintiff testified that, although he and his father purchased the truck together, prior to taking the insurance thereon the father had given his interest to plaintiff and that the latter was the owner of the truck when insured, the evidence was insufficient to make ownership of the truck a question for the jury.

ACTION OF CONTRACT on a fire insurance policy. Pleas, the general issue and several special defenses. Trial by jury at the June Term, 1923, Caledonia County, *Fish,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case. *Affirmed.*

*Shields & Conant* for the defendant.

*Searles & Graves* for the plaintiff.

SLACK, J.    This is an action of assumpsit on a policy of fire insurance dated June 19, 1922, to recover for a loss that occurred the October following.

The policy contains the following provisions, which are material to a consideration of the first two exceptions briefed: (a) "In the event of loss or damage the Assured shall give forthwith, notice thereof in writing to this Company, and within sixty (60) days after such loss, * * * * shall render a statement to this Company signed and sworn to by the Assured, stating the place, time and cause of the loss or damage, the interest of the Assured and all others in the property, the sound value thereof and the amount of loss or damage thereon, all encumbrances thereon," etc., and (b) "No suit or action on this policy or for

the recovery of any claim hereunder shall be sustainable in any court of law or equity unless the Assured shall have fully complied with all of the foregoing requirements,'' etc., among which requirements are those above enumerated.

[1, 2] The plaintiff introduced in evidence the policy, and testimony tending to show ownership of the property damaged, the fire, and the extent of the loss occasioned thereby. With the evidence standing in this posture, and during the cross-examination of the plaintiff, the defendant introduced in evidence what purported to be two proofs of loss received by it from the plaintiff, one dated December 21, 1922, and the other dated January 20, 1923, and thereupon offered in evidence two letters written by it to the plaintiff's attorneys, one under date of December 29, 1922, wherein it declined to accept the proof of loss first above mentioned for the following reasons, namely: It was not seasonably filed; there was other insurance on the property; the insured had not correctly stated therein his interest in the property; and he had overstated the amount of loss sustained—and the other under date of January 30, 1923, wherein it declined to accept the second proof of loss for substantially the same reasons stated in its former letter. These letters were offered together, for the purpose of ''connecting up the whole situation,'' and to show notice to the plaintiff that the proofs of loss were not acceptable because not filed within the time provided by the policy, and that the defendant by retaining them did not waive a compliance by the plaintiff with the terms of the policy. They were objected to on the ground that parts of them were inadmissible, and that, by reason of G. L. 5567, the plaintiff was not obliged to file a proof of loss until notified by the defendant, in writing, to do so, and were excluded subject to the defendant's exception. It is only necessary to consider the second ground of objection. The statute referred to provides that: ''A fire insurance policy shall not be void by reason of failure to make and deliver a proof of loss to the insurer, until the insurer notifies the insured in writing to make and deliver a proof of loss in accordance with the terms of the policy, and the insured fails to make and deliver such proof of loss within thirty days from the time of receiving such notice;'' etc. And G. L. 5569 provides that the provision above quoted shall be a part of every fire insurance policy written on any property located in this State. Manifestly, the statute

made it unnecessary for the plaintiff to file a proof of loss until called upon to do so by the defendant, in the manner therein pointed out. However, if he chose to do so, *and relied thereon, on the trial,* the defendant would unquestionably have the right to show its attitude respecting such proof. But such is not the case; the plaintiff did not rely upon the proofs of loss, and gave no evidence concerning them; they were introduced by the defendant, for no apparent purpose other than as a basis for the admission of the letters under consideration. In the circumstances, the letters were properly excluded. The defendant now challenges the constitutionality of G. L. 5567, but, since this question was not raised below, it is not considered.

[3]     The plaintiff was permitted to testify on re-direct examination that he never received a demand or notice from the defendant to furnish a proof of loss, to which the defendant saved an exception. The only ground urged against the admissibility of this evidence is that, the policy provided that the plaintiff should furnish a proof of loss, but in view of the statute, and what has already been said, this evidence was admissible.

[4]     The policy contains, under the title "warranties" the following: "The facts with respect to the automobile described are as follows: * * * * * The automobile described is fully paid for by the Assured and is not Mortgaged or otherwise Encumbered, except as follows: * * * * Champlain Motor Company, mortgagee." The defendant pleaded a breach of this warranty, and fraud and deceit on the part of the plaintiff in procuring the policy of insurance, and, in support of these issues, was permitted, during the cross-examination of the plaintiff, to put in evidence a mortgage given by him on the truck in question to the Foundry Motor Car and Manufacturing Co., Inc., April 25, 1921, not for the purpose of showing more encumbrances on the truck than were specified in the policy, but for the purpose of showing that the plaintiff "didn't properly set up the mortgagee." The plaintiff claimed that the latter mortgage was owned by the Champlain Motor Company at the time the policy was issued and was the mortgage therein described and that it was the only encumbrance on the truck, and, after its introduction by the defendant, called as a witness one Bradley who, after testifying that he was at one time connected with the Champlain Motor Company as salesman, testified as follows: "Q. In 1922,

who carried on the business which was formerly carried on under the name of the Foundry Motor Car Company? A. Champlain Motor Companny. * * * * Q. Was the Champlain Motor Company a different name for the same concern? A. It was." These answers were received subject to the sole objection that this was not "the proper way of proving the corporate existence," which we take to mean of the Champlain Motor Company. But, manifestly, this evidence did not relate to the corporate existence of that company. Nothing had appeared at that time to indicate whether the Champlain Motor Company was a corporation, a co-partnership, or the business name of an individual. As against the only objection urged, the evidence was admissible.

[5, 6]   The same witness testified that the Champlain Motor Company owned the mortgage in question on June 19, 1922, the date when the policy was issued. To this the defendant excepted on the ground that "there is nothing in writing about that," and the further ground that the evidence was purely hearsay. The first ground of exception is untenable. It was not necessary that there be a written assignment or transfer of the mortgage to the Champlain Motor Company to constitute it the owner thereof. *Newell Brothers* v. *Hanson,* 97 Vt. 297, 123 Atl. 208. As to the other ground of exception, the witness had already testified that he had personal knowledge on that subject, and after the objection was interposed, the court permitted him to be cross-examined and re-examined relative to such knowledge, and then denied defendant's motion to strike out the answer objected to. While the witness testified, on cross-examination, that he got his information about the change from what the president and secretary of the Champlain Motor Company told him, he also testified that he was connected with that company all the time it was in business at Newport, from August, 1921, to December, 1922, selling cars, making collections, and, part of the time, as an officer; that he was connected with its predecessor, the Foundry Motor Car and Manufacturing Co., Inc., while it was doing business at Newport; that he sold the truck in question to the plaintiff and his father, for the latter company, and took back the mortgage of April 25, 1921; that in June, 1922, the Champlain Motor Company was carrying on the business formerly conducted by the Foundry Motor Car and Manufacturing Co., Inc., and at the

same place; that during the year, both before and subsequent to the date of this policy, he made collections from the plaintiff on this mortgage indebtedness for the Champlain Motor Company; that many of these payments were made by plaintiff's check payable to that company, and that all payments made by the plaintiff were turned over to that company on account of this mortgage. Obviously, in view of this showing, the witness's evidence relative to the ownership of the mortgage cannot be said to be purely hearsay.

At the close of the plaintiff's evidence, the defendant moved for a directed verdict on the following grounds: (1) That the warranty in the policy relating to encumbrances had been breached; (2) that the defendant was guilty of fraud and misrepresentation concerning the encumbrances; (3) that the evidence tended to show that the plaintiff was not the sole and unconditional owner of the truck; and (4) failure of the plaintiff to file proofs of loss as required by the terms of the policy. The motion was overruled, and the defendant saved an exception. The consideration of the questions presented by this exception requires us to notice other provisions of the policy than those already referred to, namely: (a) "The description of the automobile insured, the facts with respect to the purchase of the same, * * * * * as set forth and contained in this policy, are statements of facts known to and warranted by the Assured to be true, and this policy is issued by the Company relying upon the truth thereof." (b) "This entire policy shall be void if the Assured has concealed or misrepresented any material fact or circumstance concerning the insurance or the subject thereof," (c) "This entire policy shall be void * * * * if the interest of the Assured in the subject of this insurance be otherwise than unconditional and sole ownership."

[7, 8]  Since the plaintiff's evidence tended to show that the Champlain Motor Company was, in fact, the owner of the only mortgage on the truck at the time the policy was issued, the defendant was not entitled to have its motion granted on the ground first specified, unless it must be held as a matter of law that, irrespective of the fact that the encumbrancer named in the policy was the actual owner of the only outstanding claim on the property, the mere failure to accurately describe the capacity in which it held that claim constituted a breach of the

warranty. It must be admitted that, under the terms of the policy, statements therein relating to encumbrances amount to warranties; and that unless such statements are literally true the policy is void. May on Ins., § 156; 14 R. C. L., p. 1027; 26 C. J., p. 158, and cases there collected. But no case has been called to our attention, and we doubt if one can be found, where a policy holder has been turned out of court because of a mere failure to use the proper technical designation of the claim owner. Had the statement read: Champlain Motor Company "holds mortgage" or "owns mortgage" or "assignee of mortgage" instead of "mortgagee" there could not be the slightest doubt but that it met the legal requirement. While the Champlain Motor Company was not technically a mortgagee, if it actually owned the mortgage we think the representation meets the test recognized by the authorities. It fully apprised the insurer that the property was encumbered, who the encumbrancer was, and the nature of the claim. This was enough.

[9] This disposes, too, of the second ground of the motion. Moreover, on the issue of fraud and deceit, the materiality of the representations, and the intent of the person making them are open questions, and, on the evidence, were clearly for the jury.

The third ground of the motion is considered in connection with an exception to the action of the court in submitting to the jury only the question of damages; and, the fourth ground is disposed of by what has already been said concerning the necessity for filing proofs of loss under the statute.

Before the arguments were commenced, the court, apparently in the presence of the jury, said: "As the court looks at the case it is a question of damages only." To this statement the defendant excepted, stating as its grounds: "There are questions relative to the mortgage, and relative to the ownership." Later, the court instructed the jury that the question of damages was the only one for their consideration. To this the defendant excepted, stating no additional grounds, but "to protect us in our other exceptions that we have taken." The defendant now claims that both the question of the ownership of the truck and the transfer of the mortgage should have been submitted to the jury. While its exceptions do not present as clearly as they might the question now urged by the defendant, in view of the fact that it had already raised the question of ownership of the

truck by its motion for a verdict, we think that the court, and the opposing party, must have fairly understood that that question was saved by the exception, and we so treat it.

[10, 11]   The plaintiff testified in direct examination that he was engaged in the trucking business, and owned the truck in question; that he and his father purchased it together; that his father was a junk dealer, and did not run the truck or know how to, and in May before the policy was issued gave the plaintiff his interest therein; and that it was registered in the State automobile department in his, plaintiff's, name, and no testimony to the contrary was offered.   There was also evidence tending to show that the truck was worth approximately sixteen hundred dollars at the time of the fire.   The defendant insists that the evidence standing thus made a case for the jury on the question of plaintiff's sole ownership, and in support of its claim urges that, the previous ownership of the property having been shown to be in the plaintiff and his father, the presumption that it continued in both must be weighed in its favor.   This depends upon whether this presumption has the force of evidence, or belongs to the class characterized by Judge Haselton in *Sheldon* v. *Wright,* 80 Vt. 298, 320, 67 Atl. 807, as "locative," its office being performed when it fixed upon the respective parties their appropriate duties. Mr. Thayer in his Preliminary Treatise on Evidence, p. 34 says: "Presumptions are not in themselves either argument or evidence, although for the time being they accomplish the result of both."   To the same effect is Jones on Evidence, vol. 1, p. 58. Nevertheless certain presumptions are generally recognized as having evidentiary force.   The presumption of innocence is generally given the force of evidence, although in actions of fraud this presumption, alone, does not necessarily take the case to the jury.   *Spaulding et al.* v. *Mutual Life Ins. Co. of N. Y.,* 94 Vt. 42, 57, 109 Atl. 22.   So, too, in this State, the presumption of undue influence where a ward made a will in favor of his guardian was held to be evidence for the contestants in the Cowdry Will Case, 77 Vt. 359, 60 Atl. 141, 3 Ann. Cas. 70; and other instances are to be found where certain presumptions are given the dignity of evidence.   But a majority of the so-called presumptions stand like the illustrations referred to by the Court in *Sheldon* v. *Wright, supra,* when it said, "It may be well enough to designate as presumptions the rules which impose the burden of proof up-

on the defendant with respect to such matters as have been referred to in the foregoing illustrations, but it is considered that as presumptions they are dry ones having only a technical existence, created for the purpose of temporary convenience only, and barren of all probative character when the case goes to the jury on conflicting evidence.'' This is clearly pointed out in *Rutland Ry. L. & P. Co.* v. *Williams et al.*, 90 Vt. 276, 281, 98 Atl. 85. The presumption of continued ownership, ordinarily at least, exists for temporary convenience only, namely, to fixing upon the respective parties their duty as to the order of proof, and has no probative value when evidence, conflicting or otherwise, is adduced.    Such is its effect in the instant case.

While the circumstances attending the claimed transfer of title to property may, undoubtedly, be such as to require the submission of that issue to the jury even in the absence of opposing proof, such is not the situation in the case before us.

Whether the defendant's exception was sufficient to save the question of its right to go to the jury on the question of the transfer of the mortgage is doubtful, but what is said concerning the last exception shows that it is without merit.

*Judgment affirmed.*