NED BARDWELL ET AL. *v.* COMMERCIAL UNION ASSURANCE CO., LTD.

November Term, 1932.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed January 4, 1933.

108

*Shields & Conant* and *Thorp & Branch* (of Manchester, N. H.), for the defendant.

*Searles & Graves, Leon D. Ripley* (of Colebrook, N. H.), and *Clarence A. Warren* (of Boston, Mass.), for the plaintiffs.

GRAHAM, J. This action is brought on an insurance policy. The plaintiff Bardwell is named as the insured in the policy, and by rider attached the loss is made payable to Farmers & Traders National Bank of Colebrook, N. H., and H. C. Taylor

(plaintiffs herein) ''as mortgagee as interest may appear.''
Seven other actions were brought by these plaintiffs on separate
insurance policies. The cases were tried together by the court,
and, on the findings of fact judgment was rendered for the
plaintiffs in each case. The cases are before us on defendants'
bill of exceptions, which presents the same questions in each
case, and in the discussion of these questions the cases are
treated as one. An action by these plaintiffs based upon an-
other policy is now pending in Washington county court, which,
by stipulation of the parties, is to abide the result of these cases.

The property named in all the policies was a dance pavilion
with restaurant attached, situated at Lemington, Vt., and known
as the ''Bluebird.'' The property was totally destroyed by fire
on September 17, 1931.

On August 5, 1931, Taylor, a former owner, sold the property
to one Mike Husson, but the deed named Ned Bardwell of
Lowell, Mass., a cousin of Husson's, as grantee. The convey-
ance was thus made at the direction of Husson and ''for business
reasons.'' As part of the purchase price, Taylor received a
note for $7,500, which was secured by a mortgage on the
premises. The note and mortgage were executed by Bardwell,
but the court expressly finds that ''Bardwell paid no part of
the purchase price for said property and had no real interest
therein, although he was given the legal title to same by being
named as grantee in the deed * * *. Said Husson furnished the
money to finance the purchase of this property and was the
equitable owner of the same.''

The insurance was issued in two groups or sets of policies
(the first group consists of four policies, dated August 8, 1931,
and amounts to $7,500; the second group consists of five policies,
dated August 22, 1931, and amounts to $7,500), and was pro-
cured by Husson through one F. E. Marshall of Colebrook,
N. H., who was an insurance broker, and the holder of a broker's
license issued by the insurance department of this State.
Marshall placed the insurance through Morrill & Hawkinson,
agents of the defendant companies in St. Johnsbury, Vt.
Marshall was informed as to the facts of ownership, but after
an examination of the deed, he informed Taylor and Husson
that the title being in Bardwell the insurance should be taken
in his name. Neither Taylor nor Husson gave any instructions

to Marshall about how the policies should be written. These matters were left to him. The insurance provided by the first set of policies was ordered by Marshall by letter to Morrill & Hawkinson, dated August 8, 1931, which did not disclose the facts of ownership which had been communicated to him, but in which he stated: ''Insurance to be written in the name of Ned Bardwell payable to H. C. Taylor, mortgagee.'' The insurance provided by the second set of policies was requested by Marshall by letter to the same agents, dated August 19, 1931, in which he asked them to issue additional policies amounting to $7,500 to cover the same property ''in the name of Ned Bardwell, payable in case of loss to H. C. Taylor as his interest may appear.''

█ The court failed to find essential facts shown by the exhibits, including the policies in suit; it made the facts shown by the exhibits a part of the findings only by reference. We have repeatedly held that the findings cannot be supplemented in this manner. *Powell* v. *Merrill,* 92 Vt. 124, 130, 103 Atl. 259; *Hooper, Tr.* v. *Kennedy,* 100 Vt. 376, 378, 138 Atl. 778; *People's Natl. Bk.* v. *Brunelle,* 101 Vt. 42, 45, 140 Atl. 160; *Firestone Tire & Rubber Co.* v. *Hart's Estate,* 104 Vt. 100, 104, 158 Atl. 90, 92; *Louden Machinery Co.* v. *Day,* 104 Vt. 520, 162 Atl. 370. But to save a reversal for this omission, counsel upon the argument conceded that all facts shown by the exhibits might be taken by us as facts found. That the real merits of the questions argued may be decided, we shall so treat and consider those facts.

The policy in each case contained the following provision: ''This policy is made and accepted subject to the foregoing stipulations and conditions, and to the stipulations and conditions printed on the back hereof, which are hereby made a part of this policy, together with such other provisions, stipulations and conditions as may be endorsed hereon or added hereto as herein provided.''

One of the provisions printed on the back of the policy and made a part thereof was the following: ''This entire policy shall be void, unless otherwise provided by agreement in writing added hereto, (a) if the interest of the insured be other than unconditional and sole ownership.''

The policy also contained the following provision: ''This policy shall be void if the insured has concealed or misrepre-

112

sented any material fact or circumstance concerning this insurance or the subject thereof."

The defendants have pleaded as a defense to liability, (a) that the ownership of the insured was other than "unconditional and sole," and therefore the policies were void, and (b) that there was misrepresentation and fraud concerning the business and financial status of Bardwell, and also in representing the Farmers & Traders National Bank as a mortgagee. The plaintiffs by their replications denied these allegations, and claimed that the defendants had been fully informed as to the facts, and therefore the forfeiture provisions of the policies had been waived and the defendants were estopped from asserting them.

The defendants bring the cases before us on exceptions to the findings of the court, and to the failure of the court to find as requested. These exceptions are numerous, and many of them raise the same questions, though stated in different form. Since their validity depends upon our holding on three main phases of the case, they may be grouped for convenience and brevity according to subject-matter as follows: (1) To the finding of the court as to conversations of Marshall with defendants' agents; (2) to the failure of the court to find the status of Marshall as an insurance broker, that, when acting as such he was the agent of the plaintiffs, and that reliance was placed by defendants upon his representations; and (3) to the failure of the court to find the true status of the bank with respect to its interest in the subject-matter of the insurance, and lack of knowledge of defendants that the bank was not a mortgagee.

█ The condition in the policy as to "sole and unconditional" ownership means that no other person has any interest in the property as owner, and the quality of the estate is not limited or affected by any condition; that the interest of the insured is completely vested, and of such a nature that he alone will sustain the entire loss if the property is destroyed. 26 C. J. 172, 173; *Rochester German Ins. Co.* v. *Schmidt*, 162 Fed. 447, 451, 89 C. C. A. 333; 2 Clement on Insurance, p. 152; *Hartford Fire Ins. Co.* v. *Keating*, 86 Md. 130, 38 Atl. 29, 63 A. S. R. 499; *Des Moines Insurance Co.* v. *Moon*, 33 Okla. 437, 126 Pac. 753.

█ This provision of the contract, unless waived by the insurer, must be given force and effect as an express condition

of the validity of the policy. *Wilson & Williams* v. *Commercial Union Assurance Co.,* 90 Vt. 105, 108, 96 Atl. 540; *Rochester German Ins. Co.* v. *Schmidt, supra.*

■ Since by the unchallenged findings Bardwell was the holder of a naked legal title to the property, without any beneficial use or interest therein, he was not the sole and unconditional owner thereof, within the meaning of this provision of the policies. *Des Moines Insurance Co.* v. *Moon, supra.*

It is unnecessary to decide whether Bardwell had an insurable interest in the property, or to consider the rule urged by the plaintiffs that if there is no written application and the company issues a policy without one, and without inquiry concerning the insured's interest, and without any representation oral or written, the policy may be assumed to have been written upon the knowledge of the company or its agent, and in such case the company cannot after a loss set up that the interest of the insured is not correctly stated in the policy. In support of the rule, the plaintiffs cite, among other authorities, 14 R. C. L. 1055, § 231; 26 C. J. 317; 2 Joyce on Insurance, 1224; *Glens Falls Insurance Co.* v. *Michael,* 167 Ind. 659, 74 N. E. 964, 8 L. R. A. (N. S.) 708. But see *Parsons, Rich & Co.* v. *Lane,* 97 Minn. 98, 106 N. W. 485, 4 L. R. A. (N. S.) 231, 7 Ann. Cas. 1144. In this case the authorities supporting the rule are reviewed and discussed, and the court holds that the rule requires an unreasonable extension of the doctrine of waiver. It says: ''The difficulty with the cases which support the appellant's contention (the rule here stated) is that they raise an estoppel or imply a waiver from conditions of which the insurer had no knowledge. The waiver rests on an implication arising out of an assumption.''

■ The rule, even if we were disposed to adopt it which we do not decide, has no application to the record before us. The policies were issued upon the express directions of Marshall to have them written in the name of Bardwell. This direction was, in effect, a representation that the sole and unconditional owner-ship was in the named insured. At least, the insurer in the absence of knowledge, either actual or imputed, would have the right to assume that his title to the property was in conformity to the title provision of the policies.

■ The conclusion is clear that the plaintiffs are barred of recovery unless the forfeiture has been waived by the insurers.

■

114

■ The law is well settled that the provision or condition in the policy as to sole ownership is waived by the insurer if its agents or subagents knew the real facts as to ownership at the time the policy was issued. Without becoming involved in a discussion of the subtle distinctions between waiver and estoppel as applied to insurance contracts, it might be more logical to state that, with full knowledge of the facts, the insurer is estopped from enforcing the condition and claiming a forfeiture. The effect is the same whichever term is applied. *Mullin* v. *Mutual Fire Ins. Co.*, 58 Vt. 113, 4 Atl. 817; *Wilson & Williams* v. *Commercial Union Assurance Co.*, 90 Vt. 105, 96 Atl. 540; *Tarbell* v. *Vermont Mut. Fire Ins. Co.*, 63 Vt. 53, 22 Atl. 533; see G. L. 5562, amended by No. 152, § 1, Acts of 1919, and G. L. 5565.

■ ■ The exceptions present the question whether, on the facts found, Marshall, in procuring the insurance, acted as the agent of the defendant companies or as agent of the insured. He was a resident of New Hampshire, and the holder of a Vermont broker's license. He was authorized thereunder to negotiate contracts of insurance or place risks only with domestic insurance companies or with authorized resident agents. G. L. 5612, amended by No. 111, Acts of 1931; G. L. 5617. In obedience to the mandate of the statute, which he communicated to Husson and Taylor, he took up the matter of placing this risk with the defendants' agents, Morrill & Hawkinson. He received from them a commission of 10 per cent. of the premiums. Other insurance covering this property had previously been placed by former owners with Marshall, and he had "handled it" through the same agency. These facts and any fair inferences which may be drawn from them clearly show that Marshall in procuring this insurance acted merely as an insurance broker, and as such he must be regarded as the agent of the insured, and not of the insurers. *Williams Manufacturing Co.* v. *Insurance Company of North America*, 93 Vt. 161, 167, 168, 106 Atl. 657. The fact that Marshall received a commission from Morrill & Hawkinson for placing the insurance with them does not alter his status as agent of the insured (*Monast* v. *Manhattan Life Ins. Co.*, 32 R. I. 557, 79 Atl. 932, 937; *Commonwealth Mut. Fire Ins. Co.* v. *William Knabe & Co. Mfg. Co.*, 171 Mass. 265, 50 N. E. 516), nor does the fact that other insurance on the property was placed by Marshall through the same agency, for

the sufficient reason, among others, that it does not appear that the defendant companies had anything to do with any such transaction.

The defendants especially attack one finding of the trial court on the ground that it is not supported by the evidence. After stating that Marshall had one or two telephone conversations with Hawkinson after the first group of policies were ordered, but before they were issued, and also that he had one or two telephone conversations with Hawkinson after the second group of policies were ordered, but before they were issued, and before the riders to be attached to the first group of policies, naming the Farmers & Traders Bank as mortgagee, were issued, the court finds: ''In one of these conversations over the 'phone Mr. Marshall communicated to Morrill & Hawkinson the fact that Mr. Husson was the real owner of the property but the insurance was to be in the name of Mr. Bardwell.''

This finding must stand if the record discloses evidence, which, upon any rational view supports it. *Labor* v. *Carpenter*, 102 Vt. 418, 421, 148 Atl. 867; *People's National Bank* v. *Brunelle*, 101 Vt. 42, 46, 140 Atl. 160. If the challenged finding is sustained, it must find support in one question and answer to be found in the cross-examination of the defendants' witness, Marshall:

''Q. Now do you recall, Mr. Marshall, having had a communication with Morrill & Hawkinson in which you communicated to them the fact that Mr. Husson was the real owner of the property but the insurance was to be in the name of Mr. Bardwell?

A. Yes.''

The defendants admit that this question and answer, standing alone, constitute a supporting basis for the finding. This is apparent, as the finding is in exact accord with the language of the question, which was affirmed by the answer. If the witness was in error, or misled by the question, as is now claimed, there was no attempt to correct the misstatement by defendants' counsel when he was turned back to them for re-examination. But the defendants argue that this answer of the witness was later explained and corrected in a subsequent cross-examination, and that the trial court should have accepted the correction and disregarded the original statement. If this is plainly shown

116

by the record, our rule commands it. *Piper* v. *Oakland Motor Co.*, 94 Vt. 211, 109 Atl. 911; *Beatty* v. *Dunn et al.*, 103 Vt. 439, 442, 157 Atl. 823. But the transcript shows otherwise. At the time Marshall was first cross-examined, the letter which he had written to Morrill & Hawkinson, dated August 8, had not been offered by the defendants. Later this letter was offered and received in evidence. It contained statements of the witness' understanding of Bardwell's business and financial worth. The witness was then recalled for a second cross-examination. His attention was directed specifically to this statement in the letter, and the second cross-examination was wholly confined to an effort to get the witness to admit that he had later, in a telephone conversation with Morrill & Hawkinson, corrected the written misstatement of his understanding. The witness was persistently elusive and shifty. To direct and unequivocal questions of the examiner whether he had corrected the statement made in the letter of August 8, "to the effect that Bardwell was a wealthy man and had a string of gasoline filling stations," the witness many times replied that he thought or believed that he notified Mr. Hawkinson "that Husson was behind the deal," or "that he mentioned Husson's name as being behind the deal for the Bluebird," or that he "communicated the fact that Husson was the man behind the deal," but that he did not know that he "mentioned Bardwell's name." The nearest to a direct and unequivocal answer by the witness on this subject was this: "Q. Well, didn't you as a matter of fact tell Mr. Hawkinson that it was Husson who had the gasoline filling stations? A. I believe I did."

If the question of the ownership of the property and any conversation between Marshall and Hawkinson on that subject were involved in this second cross-examination, it has not been pointed out, nor are we able to discover it. If the answers of the witness to which we have referred could be construed to have any such application, it was for the trial court to resolve it, and not for us.

The defendants contend that there is no evidence that the conversation as stated in this finding occurred before both sets of policies were issued, or before the fire. The record shows that the only conversations between Marshall and Hawkinson then being inquired about were those which were had before the second group of policies, and before the riders to be attached to

the first policies, were issued. Besides, the language of the question itself ("* * * you communicated to them the fact that Husson was the real owner of the property but the insurance was to be in the name of Bardwell?"), in terms and by fair inference, supports the finding and conclusion of the court that the conversation took place before some, at least, of the policies were issued. The exceptions to this finding are not sustained.

 The defendants had the right within a reasonable time after acquiring knowledge of the facts of ownership to assert a forfeiture for a breach of the "sole and unconditional" clause of the policies.. But they did not assert that right. After being informed that Husson was the real owner, instead of cancelling, they elected to treat the first policies in force by issuing a standard mortgagee clause to be attached thereto, and, after such knowledge, they issued the second group of policies. In these circumstances, the condition of the policies is deemed to be waived, and the defendants are estopped from asserting a forfeiture. *Wilson & Williams* v. *Conn. Union Assurance Co.*, *supra,* and cases cited; *German Am. Ins. Co.* v. *Hyman*, 42 Colo. 156, 94 Pac. 27, 16 L. R. A. (N. S.) 77; note, 18 Ann. Cas. 686.

 Marshall, in his letter of August 8 to Morrill & Hawkinson, stated: "Bardwell I understand is a very wealthy man and is the owner and operator of a big chain of Shell gasoline filling stations." The court found that this statement was made "through a misunderstanding" by Marshall, and that it was unable to find that it is "chargeable against either Husson or Bardwell as a misrepresentation." The defendants, by proper exceptions, present the question whether the finding is warranted by the evidence, and whether the failure of the court to find a deliberate misrepresentation, in accordance with their requests, was error. The findings do not show the subordinate facts upon which the conclusion is based, but it must be supported if the record reasonably justifies it. As we already have seen, Marshall was the agent of the plaintiffs, and so any misrepresentations by him would be chargeable to them. Was the statement such a misrepresentation of a material fact as avoids the policy?

In *Mascott* v. *First National Fire Ins. Co.*, 69 Vt. 116, 125, 37 Atl. 255, it is stated that a misrepresentation in insurance is a statement of something as a fact which is untrue, and which the insured states knowing it to be untrue, or which he states

positively as true without knowing it to be true, with intent to deceive, and which has a tendency to mislead, such fact in either case being material; and that any fact is material, the knowledge or ignorance of which would materially influence the insurer in making the contract at all, or in estimating the degree and character of the risk, or in fixing the rate of insurance.

Representations of fact concerning the financial worth of the insured are material to the risk; it would be fraudulent for the insured to intentionally mislead the insurer as to his financial standing. It is not questioned that Husson truthfully informed Marshall as to his business and financial worth, and the plaintiffs admit in their brief that the statement was in fact a mistaken understanding by Marshall of Bardwell's business and wealth. Our inquiry, therefore, is first directed to the question whether the statement was made as a fact, and with intent to deceive. Marshall testified that during the first time he met Husson he got the understanding that it was Bardwell who had the filling stations and was the wealthy man, but that later he got a different understanding. The language of the statement fully justifies the conclusion that it was not made as a fact, but was only a communication of the writer's then understanding. Mere expressions of opinion or belief are not to be taken as misrepresentations of fact. *Wood* v. *Firemen's Insurance Co.,* 126 Mass. 316. There is no specific finding that Marshall after he learned of his mistake corrected the statement in any communication with Morrill & Hawkinson, but he did tell them that Husson was the man behind the deal, and he testified that he believed he told Hawkinson that it was Husson who had the gasoline filling stations.

This record furnishes a sufficient basis for the conclusion of the court that there was no misrepresentation within the terms of the policies, that is, that the essential element of an intent to deceive was lacking. See *Spaulding, Admr.* v. *Mutual Life Insurance Co.,* 96 Vt. 67, 75, 117 Atl. 376. There is a further ground upon which the finding might be sustained. If the statement be treated as a representation of a material fact when it was made, it became immaterial after the defendants treated the policies as in force with full knowledge that Husson, and not Bardwell, was the real owner of the property.

Plaintiff Taylor borrowed $4,000 from the Farmers & Traders National Bank of Colebrook, N. H., and gave his

promissory note to the bank for that amount. This loan was secured by the delivery by Taylor of the $7,500 Bardwell note, duly indorsed by Bardwell and also by Husson; also, Taylor delivered to the bank, without written assignment, the mortgage to him securing that note. The findings state: "About the time this loan was made one of the bank officials called Mr. Marshall's office on the 'phone and informed Mr. Marshall's office that the Farmers and Traders National Bank of Colebrook should be named as mortgagee in the policies covering the Bluebird property." The court also found that Marshall communicated this information to Morrill & Hawkinson, and that neither Bardwell nor Husson knew anything about the transaction.

The defendants by numerous exceptions complain because the court failed to find that the true status of the bank was not that of a mortgagee, and because in the finding as made the court used the word "informed" instead of "requested" or "instructed." The bank was the holder of the mortgage as an assignee thereof. This is not only implied from the finding, but it follows as a matter of law. *Island Pond National Bank* v. *Lacroix,* 104 Vt. 282, 158 Atl. 684, 690; *Newell Bros.* v. *Hanson,* 97 Vt. 297, 302, 123 Atl. 208. In our view of the question here presented, the words used by the court may be treated as the equivalent of the words embodied in the defendants' requests, and also it may be conceded that the defendants issued the mortgagee riders without knowledge of the bank's technical status. There was only one mortgage; Taylor held the legal title, and the bank the equitable title. Both names appear as the mortgagee in the clauses attached to the policies. Just how the defendants were or could be harmed is not disclosed. The directions given were adequate to apprise the defendants that the property was encumbered, who the encumbrancer was, and the nature of the claim. This is all that was required. *Zabarsky* v. *Employers' Fire Ins. Co.,* 97 Vt. 377, 383, 384, 123 Atl. 520. In that case we held that, although statements relating to encumbrances amounted to warranties, if the encumbrancer named in the policy was the actual owner of the only outstanding claim on the property, the mere failure accurately to describe the capacity in which it held the claim did not constitute a breach of warranty.

In view of what we have already said, other exceptions briefed by the defendants become immaterial.

*Judgment affirmed.*

## PETITION FOR NEW TRIAL.

 The defendants bring a petition for a new trial which was heard with their exceptions. They allege that they were surprised at the finding of the court that Marshall communicated to Morrill & Hawkinson "the fact that Husson was the real owner of the property, but the insurance was to be in the name of Bardwell." In our discussion of the exceptions, we have sufficiently disposed of the contention that the finding is not justified by the evidence, that the testimony of Marshall was misinterpreted by the trial court, and that statements by the witness in his second cross-examination were an explanation or correction of this testimony. The testimony taken in support of the petition shows that during the trial counsel for the defendants carefully considered the evidence, and that Marshall was not further questioned by them because they did not then think that it was sufficient to support a finding that Marshall had communicated to Morrill & Hawkinson the facts of ownership. The only surprise, then, was that the court did not take the same view of it. Since the defendants and their counsel still persist in their belief that the language of the witness conveyed no such information, and now urge it in support of this petition, they have equal cause to be surprised by the holding of this Court on their exceptions. Such a ground of surprise cannot avail the defendants. That the rulings of the court, within the issues made by the pleadings and evidence, are different from what a party expected, can never furnish the basis of a petition for a new trial. *Barrows* v. *Wilson*, 97 Vt. 26, 121 Atl. 440; *Morgan* v. *Houston*, 25 Vt. 570. In the latter case, Redfield, C. J., makes this pertinent remark: "This is a surprise that overtakes everybody concerned in the administration of civil justice, everyday of his life. Human opinion is infinitely various, and always will be."

*Petition dismissed, with costs.*